Catherine A. HEGGY, Plaintiff–Appellee,

v.

T.L. HEGGY, Defendant–Appellant.

No. 90–6122.

United States Court of Appeals,
Tenth Circuit.

Oct. 2, 1991.

Stephen Jones (Carol Hambrick, with him on the briefs), of Jones & Hambrick, Enid, Okl., for defendant-appellant.

John C. McMurry (Gomer Smith, with him on the briefs), Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY, Chief Judge, HOLLOWAY, Circuit Judge, and WINDER, District Judge.*

---

* The Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation.

WINDER, District Judge.

Defendant-appellant Tom Heggy appeals from the final judgment of the district court in favor of plaintiff-appellee Catherine A. Heggy and against appellant for violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510–2521. Appellant's central argument is that the district court erred in ruling that Title III applies to interspousal wiretapping within the marital home. Additionally, appellant contends the district court erred in instructing the jury and in excluding certain evidence. We hold that Title III does apply to interspousal wiretapping within the marital home.[1] We also find that the district court's instructions and evidentiary rulings were not in error. We therefore affirm the judgment of the district court and remand this case for a determination of attorney's fees and costs on appeal.

## I. Background

During the last three years of his marriage to Catherine, Tom repeatedly told her he wanted a divorce. About six months before that divorce was granted, Tom placed a recording device on an extension telephone located in a barn adjacent to the marital home. At the time he installed the wiretap, Tom and Catherine were living together as husband and wife. Also at that time, Tom was Director of the Oklahoma Bureau of Narcotics and Dangerous Drugs.

There was no court order authorizing Tom to place a wiretap on the marital phone. Tom did not inform Catherine of the wiretap nor did Catherine consent to it. Tom instructed the Bureau of Narcotics

agent who installed the tap at his direction not to disclose its existence to any Bureau co-workers or to members of the Heggy household. The agent reminded Tom that the consent of one of the parties was necessary to record a telephone call.

For nearly three months, Tom used the wiretap to record Catherine's telephone conversations. He played at least one of those conversations for his secretary. Tom then catalogued the recorded interceptions and labeled them by date and content of conversation.

Following their divorce in 1987, Catherine brought this action against Tom under the civil damages provision of Title III, 18 U.S.C. § 2520, seeking both compensatory and punitive damages. Tom filed a motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) on grounds that Title III does not apply to a spouse's placement of a recording device on a phone within the marital home. The district court denied the motion. 699 F.Supp. 1514.

At trial, Tom claimed he installed the wiretap because he had been receiving death threats by telephone and wanted to record them. The jury rejected this explanation and returned a verdict in Catherine's favor for $75,000 in compensatory damages and $140,000 in punitive damages. The district court entered judgment on the verdict.

## II. Discussion

### A. Applicability of Title III to Interspousal Wiretaps

■ Appellant contends Title III does not apply to interspousal wiretaps[2] and

---

1. The holding in this case decides the issue of the applicability of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 to interspousal wire tapping within the marital home. This court, however, has previously decided that 18 U.S.C. § 2510(5)(a)(i) does not apply to wiretapping the conversations of a minor child by a custodial parent. See Newcomb v. Ingle, 944 F.2d 1534 (10th Cir. 1991). In the Newcomb decision, this court specifically noted that the type of situation addressed in this opinion is "qualitatively different from a custodial parent tapping a minor child's conversations

within the family home." Newcomb, 944 F.2d at 1535.

2. We use the phrase "interspousal wiretaps" as a shorthand description for electronic surveillance directed by one spouse against another. The phraseology is imperfect, as the court in Kratz v. Kratz, 477 F.Supp. 463, 468 n. 10 (E.D.Penn.1979) noted, because it does not describe the snooping spouse's interception of the communications of third parties with the targeted spouse. "[Catherine Heggy], of course, was not talking to herself on the telephone." Kratz, 477 F.Supp. at 468 n. 10.

thus the trial court erred in denying his motions to dismiss and for directed verdict. The district court's construction of a federal statute is a question of law that we review de novo. *In re Thompson,* 894 F.2d 1227, 1228 (10th Cir.1990). De novo review means we make an independent determination of the issues. *United States v. Irvin,* 906 F.2d 1424, 1426 (10th Cir.1990).

Whether Title III provides a remedy for interspousal wiretapping within the marital home is a question that has divided the federal courts of appeal.[3] The Fourth, Sixth and Eighth Circuits have held that such wiretapping is actionable under Title III. *See Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir.1989); *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir.1984); *United States v. Jones,* 542 F.2d 661, 673 (6th Cir.1976). The Second and Fifth Circuits have held that Title III does not apply to interspousal wiretaps. *See Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir. 1977); *Simpson v. Simpson,* 490 F.2d 803, 810 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974).

After reviewing these authorities, and others, the district court below held that Title III, specifically 18 U.S.C. § 2520 thereof, does apply to interspousal wiretaps. *See Heggy v. Heggy,* 699 F.Supp. 1514, 1517 (W.D.Okla.1988). We agree with the district court, and join the majority of federal circuit courts in holding that Title III does provide a remedy for such wiretapping. We believe this conclusion is compelled first and foremost by the clear and unambiguous language of the statute.

At the time Tom placed the wiretap on the phone, Title III provided in relevant part:

(1) *Except as otherwise specifically provided in this chapter any person* who—

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

. . .

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication . . .

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication violation of this subsection; or

(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; . . .

shall be fined not more than $10,000 or imprisoned not more than five (5) years, or both.

18 U.S.C. § 2511(1) (emphasis added).[4]

A civil cause of action for violation of § 2511 is provided by 18 U.S.C. § 2520 which, at the time the wiretapping in this case began, provided in part:

*Any person* whose wire or oral communication is intercepted, disclosed, or used in

**3.** The question has divided the federal district courts and state courts as well. *See, e.g., Perfit v. Perfit,* 693 F.Supp. 851, 855–56 (C.D.Cal.1988) (Title III provides no civil remedy for interspousal wiretapping); *Nations v. Nations,* 670 F.Supp. 1432, 1436 (W.D.Ark.1987); (civil remedy provided); *People v. Otto,* 226 Cal.App.3d 1630, 1649, 277 Cal.Rptr. 596, 607 (1991) (no remedy), *pet. rev. granted,* 280 Cal.Rptr. 91, 808 P.2d 234 (Cal.1991); *Ransom v. Ransom,* 253 Ga. 656, 324 S.E.2d 437, 439 (1985) (remedy provided).

**4.** After the wiretap was placed on the Heggy phone on November 25, 1986, but before it was removed on February 16, 1987, an amendment

to the statute became effective. Among other things, the amendment clarified the mental state required to violate the statute by substituting "intentionally" for "willfully" in subsections (a)–(d) of § 2511(1). *See* Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, § 101(f), 100 Stat. 1853 (1986) (effective Jan. 21, 1987); Senate Report, 1986 Code Cong. & Admin.News at 3577. The parties implicitly agree that the controlling statute is the one in effect at the time the violation commenced. The subsequent amendment of the statute, however, does not alter our holding that §§ 2511 and 2520 apply to interspousal wiretapping.

violation of this chapter shall (1) have a civil cause of action against *any person* who intercepts, discloses, or uses, or procures any other person to intercept, disclose or use such communications, and (2) be entitled to recover from *any such person* —

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

18 U.S.C. § 2520 (emphasis added).[5]

As would seem clear from the emphasized language, Tom's wiretapping of the household phone is proscribed, and Catherine's recovery is allowed, because § 2511(1) prohibits the interception, use or disclosure of wire communications by *any* person except as *specifically* provided in the statute. And, furthermore, § 2520 provides a cause of action to *any* person who is the victim of a § 2511 violation. The statute defines "person" as "any individual," 18 U.S.C. § 2510(6), thus including Tom and Catherine. Finally, appellant makes no claim that any of the specific exceptions provided in 18 U.S.C. § 2511(2) are applicable.

Because the reach of the statute appears clear on its face, resort to legislative history would seem unnecessary. Appellant, however, urges the court to adopt the view in *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct.

176, 42 L.Ed.2d 141 (1974), where the Fifth Circuit carved out an exception for interspousal wiretapping because it could find no specific indication in the legislative history that Congress intended the statute to reach that far. The *Simpson* court reached this conclusion despite the frank recognition that the "naked language" of Title III covered interspousal wiretapping. *Simpson*, 490 F.2d at 805.[6]

The *Simpson* court's approach to statutory construction has been criticized by courts and commentators. *See, e.g., Kempf v. Kempf*, 868 F.2d 970, 972–73 (8th Cir.1989); *Kratz v. Kratz*, 477 F.Supp. 463, 468–69 (E.D.Penn.1979); Comment, *Wiretapping and the Modern Marriage: Does Title III Provide a Federal Remedy for Victims of Interspousal Electronic Surveillance?* 91 Dick.L.Rev. 855, 872, 876 (1987) (hereinafter *"Wiretapping and Modern Marriage"*).

We reject not only the *Simpson* court's method of statutory analysis but also its interpretation of the legislative history.[7] Instead, we agree with the district court that the legislative history of Title III evinces a congressional awareness of the widespread use of electronic eavesdropping in domestic relations cases and an intent to prohibit such eavesdropping. *See* Remarks of Sen. Long, Hearings on Invasions of Privacy Before the Subcomm. on Admin. Practice and Procedure of the Sen. Comm. on the Judiciary, 89th Cong. 1st Sess., part

---

5. This section of the statute was amended, effective January 21, 1987, as follows:

   (a) In general.—Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

   (b) Relief.—In an action under this section, appropriate relief includes—

   (1) such preliminary and other equitable or declaratory relief as may be appropriate;

   (2) damages under subsection (c) and punitive damages in appropriate cases; and

   (3) a reasonable attorney's fee and other litigation costs reasonably incurred.

   18 U.S.C.A. § 2520(a)–(b) (Supp.1991).

6. Perhaps in light of this recognition, the *Simpson* court candidly expressed "considerable doubt" about its holding, *Simpson v. Simpson*, 490 F.2d 803, 804 (5th Cir.1974), and limited the holding to the specific facts of its case, *id.* at 810.

7. This criticism of *Simpson* is distinguishable from this court's previous citation to *Simpson* with approval in finding parental immunity from civil claims under Title III in *Newcomb*, 944 F.2d at 1536 (quoting *Simpson*, 490 F.2d at 809). In *Newcomb* this court placed the language from *Simpson* describing congressional intent to abstain from interference in the interrelationship of family members in the context of a House Judiciary Committee Comment concerning the right of a father to supervise his teenage daughter. *See Newcomb*, 944 F.2d at 1536 n. 5.

5 at 2261 (1965–66) ("The three large areas of snooping in this [non-governmental] field are (1) industrial (2) divorce cases, and (3) politics. So far, we have heard no real justification for continuance of snooping in these areas.").

Professor Robert Blakey, generally credited as the architect of Title III, testified that "private bugging in this country can be divided into two broad categories, commercial espionage and marital litigation." Hearings on the Right to Privacy Act of 1967 Before the Subcomm. on Admin. Practice and Procedure of the Sen. Comm. on the Judiciary, 90th Cong., 1st Sess., part 2 at 413 (1967). Senator Hruska, a co-sponsor of the bill, commenting on the scope of the statute, noted that "[a] broad prohibition is imposed on private use of electronic surveillance, particularly in domestic relations and industrial espionage situations." S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2110, 2112, 2274.

Moreover, and in light of the split of judicial authority, had it been the intent of Congress to keep interspousal wiretapping beyond the reach of Title III, Congress could have expressly excluded such wiretapping when it overhauled Title III in the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1848. Although the Privacy Act amendments touched nearly every section of Title III, Congress did not codify the judicially created exception for interspousal wiretapping found in *Simpson.*

■ Finally, we reject appellant's contention that interpreting Title III to reach interspousal wiretapping results in unwarranted federal intrusion into the law of domestic relations, a subject traditionally left to state regulation. As the court stated in *Kratz v. Kratz*, 477 F.Supp. 463, 476 (E.D.Penn.1979):

> Title III regulates electronic eavesdropping, not marital relations. It proscribes one method of gathering evidence for use in, *inter alia*, domestic relations cases, but in no manner deals with the merits of such cases.... The evils of electronic surveillance are not peculiar to the marital relationship, and there is no more reason to permit husbands and wives to perpetrate these evils upon each other with impunity than there is to permit them legally to commit any other crimes against each other.

*Kratz,* 477 F.Supp. at 476. It is highly unlikely, as some courts have suggested, *see Lizza v. Lizza,* 631 F.Supp. 529, 533 (E.D.N.Y.1986), that applying Title III to interspousal wiretapping will result in increased federal regulation of domestic relations. Rather, the more likely result is a decrease in interspousal wiretapping.[8] *See Wiretapping and Modern Marriage,* 91 Dick.L.Rev. at 882–83.

### B. Defense of "Good Faith" Reliance on Mistake of Law

■ Appellant argues he was entitled to raise a "good faith" defense to appellee's claim that he violated Title III. At trial, appellant's counsel asked whether he thought there was "anything illegal" about wiretapping his home phone. Tr.Vol. II at 29. The court sustained an objection to the question. Through counsel, appellant offered to testify that it was his opinion, based on his understanding of the law, that

---

**8.** We also reject the view that appellant is somehow shielded from liability under the doctrine of interspousal tort immunity. The short answer to the immunity defense is that Title III creates a federal cause of action that cannot be barred by any state law or policy. *See Heyman v. Heyman,* 548 F.Supp. 1041, 1045 (N.D.Ill. 1982); *Kratz,* 477 F.Supp. at 475. Moreover, the outdated common law rationale for the doctrine—that a woman's legal existence merged into that of her husband upon marriage—has resulted in a trend toward partial or total abrogation of the doctrine. *See* Comment, *Wiretap-*

*ping and the Modern Marriage: Does Title III Provide a Federal Remedy for Victims of Interspousal Electronic Surveillance?* 91 Dick.L.Rev. 855, 858–60 (1987); Note, *Husband and Wife—Interspousal Immunity for Intentional Torts is Unconstitutionally Irrational—Moran v. Beyer,* 58 Temp.L.Q. 709 n. 1 (1985). Retention of the doctrine in the interspousal wiretapping context is particularly ill-founded because whatever domestic tranquility, that may have been fostered by immunity surely has been lost by the time one spouse is conducting electronic surveillance upon the other.

he could place a wiretap on the phone without his wife's consent. *Id.* at 31–32.

■ Whether a "good faith" defense based upon mistake of law exists under Title III is a question this court reviews de novo. *In re Thompson,* 894 F.2d 1227, 1228 (10th Cir.1990). Relying on *Campiti v. Walonis,* 611 F.2d 387, 394–95 (1st Cir. 1979), the trial court rejected appellant's proffered testimony as irrelevant because there is no "good faith" defense based on a misunderstanding of the law. Tr.Vol. II at 121. We agree with the district court.

Title III expressly provides a good faith defense in a limited number of instances, such as reliance on a court warrant or order, grand jury subpoena or legislative or statutory authorization. *See* 18 U.S.C.A. § 2520(d) (Supp.1991). Good faith reliance on mistake of law is not listed among these defenses. The law's reluctance to allow testimony concerning subjective belief after the fact reflects an obvious concern with the reliability of such testimony. Accordingly, we find no such defense available under the statute.

## C. Willfulness/Intentional Instruction

■ The district court instructed the jury that "intentionally/willfully" was defined as follows: "An act is done 'intentionally or wilfully' if it is done knowingly and voluntarily as distinguished from accidentally; or is done with a bad purpose; or without justifiable excuse; or stubbornly, obstinately or perversely." Rec.Vol. I, doc. 93. Appellant requested the following instruction: "An act is done 'intentionally' or 'wilfully' if it is done without ground for believing it is lawful, or if it is done with careless disregard of whether or not the act is lawful."

■ "When examining a challenge to jury instructions, we review the record as a whole to determine whether the instructions 'state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable.'" *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1271

(10th Cir.1988) (quoting *Ramsey v. Culpepper,* 738 F.2d 1092, 1098 (10th Cir.1984)). An error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial. *Id.* at 1271 n. 19.

We believe the district court's instruction on the required mental state was a correct statement of the law, and, in any event, did not prejudice appellant. In addition to the willfulness/intentional instruction, the district court gave a punitive damages instruction that required a finding that appellant's wiretapping was done "maliciously," "oppressively," or "wantonly." Rec.Vol. I, doc. 93. The jury returned a verdict for both compensatory and punitive damages. Thus, assuming the district court should have given appellant's requested instruction, such refusal was not reversible error in light of the jury's implicit finding of recklessness in its award of punitive damages.

We find appellant's remaining contentions regarding the admissibility of the illegally obtained tapes and the exclusion of evidence of appellee's suspicion that her phone was taped to be without merit.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's final judgment in favor of appellee and against appellant for violation of Title III. We REMAND to the district court for determination of attorney's fees and costs on appeal under 18 U.S.C. § 2520.