James **THOMPSON**, Plaintiff–Appellant,

v.

Denise **DULANEY**; Elsie Dulaney; Phil Dulaney; Dale Brounstein; Russ Sardo; Robert Moody; Jerry Kobelin, Defendants–Appellees.

No. 91–4089.

United States Court of Appeals, Tenth Circuit.

July 23, 1992.

---

James L. Thompson of Jardine, Linebaugh, Brown & Dunn, Salt Lake City, Utah, for plaintiff-appellant.

Lynn S. Davies of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for defendants-appellees Denise Dulaney, Phil Dulaney, and Elsie Dulaney.

Roger P. Christensen and Russell G. Workman of Christensen, Jensen & Powell, P.C., Salt Lake City, Utah, for defendant-appellee Dale Brounstein.

Thomas S. Taylor of Taylor, Moody & Thorne, Provo, Utah, for defendants-appellees Russ Sardo, Robert Moody, and Jerry Kobelin.

Before EBEL and BARRETT, Circuit Judges, and KANE,* Senior District Judge.

EBEL, Circuit Judge.

### I

In 1989, a Utah state court granted a divorce to defendant-appellee Denise Dulaney and plaintiff-appellant James Thompson. During the divorce proceedings, Thompson discovered that Dulaney had taped several of his telephone conversations with the couple's minor children who had been living with Dulaney. Thompson filed a motion in limine to exclude from the custody proceedings the tapes and any testimony based on the tapes. A transcript of two of the taped conversations was admitted into evidence as an exhibit to the deposition of an expert witness, defendant-appellee Russ Sardo. The state court did not rule on Thompson's motion to exclude the tapes, and Thompson did not appeal the custody award to Dulaney.

In 1990, Thompson, pro se, brought this suit against defendants: his ex-wife, Denise Dulaney; her parents, Elsie and Phil Dulaney; Dulaney's experts in the custody proceedings, Drs. Dale Brounstein and Russ Sardo; and Dulaney's attorneys, Robert Moody and Jerry Kobelin. Together with several state statutory and tort claims, the complaint alleged violation of the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (Title III), and conspiracy to violate Title III, and sought eleven million dollars in general and punitive damages against all defendants. After an initial discovery period, the parties filed cross-motions for summary judgment. The district court, relying on the analysis in *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir.1977), ruled that Title III is inapplicable to this case because it is a "domestic dispute situation," and granted defendants' motions for summary judgment. Order on Motions, Appellant's App. at 374.[1] Thompson appeals.[2]

We review the district court's grant of summary judgment de novo, applying the same standards used by that court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). Because the language of Title III does not support the district court's understanding of a domestic exception to Title III, we reverse in part and remand the case for further proceedings in the district court for the reasons stated below.

The relevant uncontroverted facts in this case are as follows. While Dulaney and the minor children were living in her parents' home in Oregon during the pendency of the divorce action, Dulaney taped several conversations between Thompson and the children. She had those tapes transcribed, and distributed the tapes and/or transcriptions to others, including her attorneys and experts Sardo and Brounstein.

---

* Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

1. Based on the court's legal ruling against Thompson on his only federal claim, the district court also dismissed Thompson's pendent state law claims.

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

As noted above, transcriptions of two conversations were admitted in the custody proceedings. Other facts are hotly disputed; however, they are not relevant at this juncture in light of our interpretation of Title III. At best, they are a basis for further determinations by the district court on remand.[3]

## II

■ In 1991, this court decided *Heggy v. Heggy*, 944 F.2d 1537 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992). There, where one spouse recorded the telephone conversations of the other spouse while both were living in the marital home, we rejected an "interspousal" exception to Title III. Noting a split among the various circuits that have examined the issue, we held that Title III does apply to interspousal wiretapping within the marital home. *Id.* —— U.S. ——, 112 S.Ct. at 1539. This ruling was based on the unambiguous language of the statute, and was further supported by the legislative history indicating that Title III was intended to be used in domestic relations cases. By ruling that no interspousal exception exists in Title III, we aligned ourselves with the Eighth, Sixth, and Fourth Circuits, whose opinions, together with *Heggy*, constitute the majority rule on this issue. *See Kempf v. Kempf*, 868 F.2d 970 (8th Cir.1989); *Pritchard v. Pritchard*, 732 F.2d 372 (4th Cir.1984); *United States v. Jones*, 542 F.2d 661 (6th Cir.1976). *See generally*, Sternberg, *Interspousal Wiretapping: Defining "Marital Home" for Purposes of Civil Recovery Under Title III*, 28 J.Fam.L. 771 (1989/1990).[4]

We apply the analysis in *Heggy* to the case before us, beginning with its pronouncement that the language in Title III is "clear and unambiguous." "When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, ——, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991). Section 2511 of Title III states, in part:

Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication ...;

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or

---

**3.** Thompson argues on appeal, as he did before the district court, that certain facts are deemed admitted because defendants failed timely to deny various Requests for Admissions. Not only does the record not establish Thompson's allegations that defendants' responses were untimely under Fed.R.Civ.P. 36 or substantively defective in denying Thompson's numerous requests, the record contains no ruling by the district court that any facts were deemed admitted before that court. The consequences under Rule 36 are not inevitable, and thus we do not treat such facts as uncontroverted.

**4.** In 1991 we also decided *Newcomb v. Ingle*, 944 F.2d 1534 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992), in which a child sued his custodial parent under Title III for tapping his conversations within the family home while he was a minor. *Heggy* distinguished *Newcomb* by repeating *Newcomb's* assertion that interspousal tapping is "'qualitatively different from a custodial parent tapping a minor child's conversations within the family home.'" *Heggy*, 944 F.2d at 1538 n. 1 (quoting *Newcomb*, 944 F.2d at 1535). We distinguish *Newcomb* as did *Heggy* by noting that in *Newcomb* it was a minor child living at home at the time of the wiretap who was complaining, whereas here, as in *Heggy*, it is the spouse who is complaining. We follow *Heggy* which concluded that there is no interspousal exception to Title III. *But see* Zuber, *Domestic Eavesdropping and Wiretapping: Admissibility of Intercepted Communications*, 21 Colo.Law. 455, 456 (1992) (noting "philosophical differences" between *Heggy* and *Newcomb*).

having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

This statutory language, prohibiting "any person" from intercepting communications, is clear and broad. No language in the statute evidences a congressional intent to except tapping in this factual setting. *See Heggy*, 944 F.2d at 1540; *Kempf*, 868 F.2d at 972–73; *Pritchard*, 732 F.2d at 373; *Jones*, 542 F.2d at 667.

Although resort to the legislative history is unnecessary in light of the unambiguous language of Title III, *see Pritchard*, 732 F.2d at 373, we reiterate *Heggy*'s characterization of that history as "evinc[ing] a congressional awareness of the widespread use of electronic eavesdropping in domestic relations cases and an intent to prohibit such eavesdropping." 944 F.2d at 1540. First, remarks by Senator Long: "'The three large areas of snooping in this [nongovernmental] field are (1) industrial (2) divorce cases, and (3) politics. So far, we have heard no real justification for continuance of snooping in these areas.'" *Id.* at 1540–41 (citing Hearings on Invasions of Privacy Before the Subcomm. on Admin. Practice and Procedure of the Sen. Comm. on the Judiciary, 89th Cong., 1st Sess., part 5 at 2261 (1965–66)). Second, Professor Robert Blakey, "generally credited as the architect of Title III," testifying that: "'private bugging in this country can be divided into two broad categories, commercial espionage and marital litigation.' Hearings on the Right to Privacy Act of 1967 Before the Subcomm. on Admin. Practice and Procedure of the Sen. Comm. on the Judiciary, 90th Cong., 1st Sess., part 2 at 413 (1967)." *Id.* at 1541. Finally, comments of Senator Hruska, a co-sponsor of the bill: "'[a] broad prohibition is imposed on private use of electronic surveillance, particularly in domestic relations and industrial espionage situations.' S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 2110, 2112, 2274." *Id.; see also Kempf*, 868 F.2d at 973 (discussing legislative history of Title III); *Pritchard*, 732 F.2d at 373–74 (same); *Jones*, 542 F.2d at 667–69 (detailed discussion of same).

 Under our interpretation of Title III, we hasten to note that not all wiretap interceptions involving spouses will be actionable. First, the wording of the statute, while broad, requires that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions. Second, Title III liability for use or disclosure of the contents of an intercepted communication requires both intentional conduct and knowledge that "the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." Third, consent under § 2511(2)(c) is an exception that will take many fact patterns out of Title III liability.[5] If a further limitation is needed to exempt spousal wiretaps from Title III, that need must be addressed to Congress. *See Jones*, 542 F.2d at 673.

### III

In light of our ruling, Thompson may have a cause of action for federal wiretap violation in this case. Because the district court's opinion was based on an incorrect interpretation of the statute, we now examine Thompson's specific claims against the various defendants.

 There exists no interspousal exception to Title III liability. Therefore, Thompson's claims against Denise Dulaney's parents, Elsie and Phil Dulaney, for

---

5. In addition, § 2510(5)(a)(i) excepts from the definition of devices which, when used to intercept communications, may result in liability under the statute, the following:

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business.... The scope of this section has not been developed.

intentional wiretapping and disclosure survive summary judgment. We agree, however, with the district court's comments that Elsie and Phil Dulaney's ownership of their home and telephone and their conduct in hiring lawyers and experts for Denise Dulaney's custody suit are not a basis for liability under the statute. No language in Title III prohibits their conduct. Additionally, that conduct here does not, in our view, factually support a cause of action for conspiracy to violate Title III. As the district court noted, no other factual basis for any claims against Elsie and Phil Dulaney exists in the record. Accordingly, we affirm the district court's summary judgment ruling as to Thompson's conspiracy claims against Elsie and Phil Dulaney. We remand as to the Dulaneys, however, for further determination on Thompson's claims of intentional wiretapping and disclosure, because factual disputes preclude a summary ruling on those claims.

■ We remand also as to Denise Dulaney on Thompson's claims of wiretapping, use and disclosure in violation of Title III. Denise Dulaney argues that the consent exception found in § 2511(2)(d) relieves her of liability, because 1) Thompson consented to the tapping, and 2) as a parent acting in the best interests of her minor children, she consented to the tapping for them. Because the district court did not rule on this defense, it is not properly before us, and the record is not well developed on that point; therefore, we do not address these arguments. However, on remand, the district court should do so, if appropriate. We also remand for further consideration of Thompson's conspiracy claims as between Denise Dulaney and defendant Sardo.[6]

■ Before discussing the balance of Thompson's claims against experts Sardo and Brounstein and attorneys Moody and Kobelin, we examine use and disclosure liability under Title III. Liability for *intercepting* or procuring another to intercept communications under subsections (a) and (b) of § 2511(1) requires that a plaintiff prove intentional conduct. However, liability under subsections (c) and (d) of § 2511(1) for *use and disclosure* of information obtained from the contents of intercepted communications requires more. The use or disclosure must still be intentional, but in addition, a plaintiff must show that a defendant "know[s] or ha[s] reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." This language, found in each of subsections (c) and (d), compels the conclusion that, to establish liability under one of those sections, a plaintiff must demonstrate a greater degree of knowledge on the part of a defendant. The defendant must know 1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of Title III.

■ Although a defendant may be presumed to know the law, *see Penny v. Giuffrida*, 897 F.2d 1543, 1547 (10th Cir.1990) ("citizens are presumed to know the law") (citing *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 63 & n. 17, 104 S.Ct. 2218, 2225 n. 17, 81 L.Ed.2d 42 (1984)), to establish use and disclosure liability under Title III, a defendant must be shown to have been aware of the factual circumstances that would violate the statute. For example, it is not enough to show that a defendant merely knew he was using or disclosing information from an intercepted communication. It must also be shown that the defendant knew, *inter alia*, that neither party to the intercepted conversation had consented to the interception.

■ We turn now to Thompson's claims against the remaining defendants. In its summary judgment order, the district court noted that Thompson had failed to demonstrate facts in support of his various Title III claims against Sardo, Moody, Kobelin,

---

6. Thompson alleges that Sardo "specifically requested that Denise Dulaney gather wiretapped evidence" for use in the custody proceedings. Appellant's Brief at 36.

and Brounstein. Order on Motions, Appellant's App. at 376–77. However, the order is not clear whether this lack of a factual basis constitutes separate alternative grounds for granting summary judgment to those defendants. The wording of the order suggests that these determinations may have depended, at least in part, on the district court's erroneous understanding of a domestic exception to Title III. In light of our holding that there is no interspousal exception, we reverse and remand Thompson's use and disclosure claims against Sardo, Moody, Kobelin, and Brounstein for further determination under the analysis set forth in this opinion. However, following our review of the record, we agree with the district court that Thompson's conspiracy claims against defendants Moody, Kobelin, and Brounstein find no factual support in the record. We affirm the district court's summary ruling against Thompson on his claims of conspiracy to violate Title III as to those particular defendants.

On remand, the district court should determine whether Thompson has made a showing sufficient to survive defendants' motions for summary judgment, *see Applied Genetics*, 912 F.2d at 1241 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)), as to the following: 1) whether the alleged conduct of defendants violates Title III and whether any of the statutory exceptions to liability under Title III apply, 2) whether such conduct was intentional, and 3) as to Thompson's use and disclosure claims, whether those defendants knew of the factual circumstances surrounding the wiretapping of Thompson's communications which make such an interception illegal under Title III.

The judgment of the United States District Court for the District of Utah is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.