David BRITTON, Dennis London and Double D, Inc., Plaintiffs

v.

Dorothy BRITTON, Defendant

No. 02–CV–52–B–S.

United States District Court,
D. Maine.

Sept. 19, 2002.

David W. Bate, Esq., Bangor, ME, for Plaintiffs.

John A. Woodcock, Jr., Weatherbee, Woodcock, Burlock & Woodcock, Bangor, ME, for Defendant.

## ORDER DENYING SUMMARY JUDGMENT

SINGAL, District Judge.

An estranged husband, his business partner and their closely held Maine corporation claim that his wife violated federal and state wiretapping statutes and committed the tort of invasion of privacy by recording telephone calls to and from the corporate entity. Presently before the Court is Defendant wife's motion to dismiss or, in the alternative, requesting that

the Court abstain from accepting jurisdiction (Docket #5). For the following reasons, the Court DENIES Defendant's motion.

## I. SUMMARY JUDGMENT STANDARD

The Court treats Defendant's motion to dismiss as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b). *Whiting v. Maiolini,* 921 F.2d 5, 6 (1st Cir.1990) (noting that district courts have discretion to convert 12(b)(6) motions to Rule 56 motions without prior notice to the parties provided nonmovant has had the opportunity to respond to movant's affidavits and factual allegations). In her motion, Defendant presented matters outside the pleadings, to which Plaintiffs have responded at length. *See Collier v. City of Chicopee,* 158 F.3d 601, 603 (1st Cir.1998) (finding constructive notice of impending conversion where a movant attaches outside materials to its pleadings and requiring that a nonmovant have an opportunity to present its own factual material).

Summary judgment is appropriate where the record developed by the parties shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the moving party, Defendant must make "a preliminary showing that no genuine issue of material fact exists." *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996) (quoting *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995)). If she succeeds in doing so, Plaintiffs must "contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *Id.*

A factual dispute is "genuine" or "trialworthy" "only if a reasonable jury could resolve it in favor of either party". *Basic Controlex Corp. v. Klockner Moeller Corp.,* 202 F.3d 450, 453 (1st Cir.2000). A material fact is one that has the potential to change the outcome under governing law if the dispute is resolved favorably to the nonmoving party. *Steinke v. Sungard Fin. Sys., Inc.,* 121 F.3d 763, 768 (1st Cir.1997). The Court views the record in the light most favorable to the non-moving party and gives that party the benefit of all reasonable inferences in its favor. *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997).

## II. FACTS

 The following facts are undisputed except as otherwise noted.[1] Defendant

---

1. The non-moving party to a motion for summary judgment shall submit an opposing statement of material facts "admit[ting], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph of the moving party's statement of material facts ...." D. Me. L.R. 56(c). The opposing statement "may contain in a separate section additional facts ...." *Id.* Facts contained in either party's statement of material facts are deemed admitted "unless properly controverted." D. Me. L.R. 56(e). Here, Plaintiffs' opposing statement of material facts failed to admit, deny or qualify Defendant's statement of material facts (Docket #11). As such, the Court treats Plaintiffs' responsive statement as "additional facts" and Defendant's statement of material facts is deemed admitted in its entirety to the extent that the statement is sup-

ported by appropriate record citations. *See O'Donnell v. Earle W. Noyes & Sons,* 98 F.Supp.2d 60, 61 n. 1 (D.Me.2000).

Defendant objects generally to Plaintiffs' entire opposing statement of material facts on the grounds that the statement is designed to force her to either assert or waive her Fifth Amendment privilege against self-incrimination (Docket #15). Because Ms. Britton has not asserted her privilege against self-incrimination in this matter, the privilege has no evidentiary effect and she may not object on those grounds. *See N. River Ins. Co. v. Stefanou,* 831 F.2d 484, 487 (4th Cir.1987) (invoking Fifth Amendment privilege in response to a civil pleading requires a sufficiently particular affirmative assertion); *see also United States v. Stein,* 233 F.3d 6, 14 (1st Cir.2000)

Dorothy Britton ("Ms.Britton") and Plaintiff David Britton ("Mr.Britton") shared a marital residence in Houlton, Maine, from 1993 to the summer of 2000. On March 27, 2000, Ms. Britton filed for divorce from Mr. Britton in Maine District Court, alleging adultery. The divorce action is still pending.

Plaintiffs operate a trucking business, Double D, Inc., from the garage of the Britton's residence in Houlton. A significant issue in the divorce is the valuation of Plaintiff Double D, Inc. ("Double D."), a Maine corporation owned entirely by Mr. Britton and Plaintiff Dennis London ("London") as equal shareholders. The corporation owns and maintains at least one telephone line that also has an extension located in the residential portion of the home. The line is used almost exclusively for business purposes and the majority of calls on the line are interstate or international. With rare exceptions, Mr. Britton, London or other Double D employees initiate and receive calls on the Double D line.

█ In the summer of 2000, Mr. Britton discovered a recording device in the basement of the Houlton residence connected to the telephone line owned by Double D. He also discovered an audio tape that appeared to be labeled in Ms. Britton's handwriting in the bedroom of the Houlton residence. On playing the tape, Mr. Britton recognized his own voice engaged in telephone conversations that had been communicated through the Double D line. Neither Mr. Britton, London nor Double D authorized the recording. Ms. Britton does not admit that she made the recordings.[2]

During the divorce proceedings, Ms. Britton invoked her Fifth Amendment privilege against self-incrimination when ordered to produce any such additional recordings. Mr. Britton then moved in state court to find Ms. Britton in contempt and compel production of the recordings. The Maine Court denied Mr. Britton's motion and issued a protective order on September 21, 2000, prohibiting the use of any recording or information derived from a recording in the divorce proceeding. The protective order also prohibited Mr. Britton from seeking to compel production of the recordings at any future point in the proceedings.

On March 18, 2002, Mr. Britton, London and Double D filed a four count complaint against Ms. Britton in this Court. Count I seeks damages under the civil remedy portion of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 for intentional interception of Plaintiffs' telephone communications. *See* 18 U.S.C § 2510 *et seq.* (2000). Count II seeks damages under the civil remedy portion of the Maine wiretapping statute for willful inter-

*cert. denied,* 532 U.S. 943, 121 S.Ct. 1406, 149 L.Ed.2d 348 (2001) (noting that the Fifth Amendment privilege applies in any proceeding where answers given might tend to incriminate the witness in a future criminal proceeding).

2. Defendant objects to all references in Plaintiffs' opposing statement of material facts that would require her to admit the fact of the recordings. She objects to the second sentence of ¶ 1, regarding the "criminal" nature of her conduct and the third sentence of ¶ 6, regarding her decision not to tap the residential telephone lines (*See* Def.'s Resp. to Pls.'

Opp'n Statement of Material Facts at ¶¶ 1, 6 (Docket # 15).) The Court finds that the statements are inadmissible in evidence as lay opinion without sufficient personal knowledge and are therefore excluded from the summary judgment record. *See* Fed.R.Civ.P. 56(e); Fed.R.Evid. 602, 701.

Defendant's own statement of material facts avers only that "David Britton claimed that Dorothy Britton had taped some of his telephone conversations" in the divorce proceeding. (*See* Def.'s Statement of Material Facts at ¶ 2 (Docket # 7).)

ception of Plaintiff's telephone communication. *See* 15 M.S.R.A. § 709 *et seq.* (Supp.2001). Counts III and IV seek punitive damages in tort resulting from Ms. Britton's alleged intentional invasion of Plaintiffs' privacy. On May 16, 2002, Ms. Britton moved to dismiss Count I or, in the alternative, to request that the Court abstain from accepting jurisdiction over the entire matter.[3]

## III. FEDERAL WIRETAPPING CLAIM

■ Defendant asserts that federal law does not provide a cause of action for Plaintiffs' wiretapping claim because the alleged surveillance occurred between spouses in anticipation of divorce. As Defendant limits her challenge to the federal question underlying Plaintiffs' state wiretapping and invasion of privacy claims, the Court similarly limits its discussion to the federal wiretapping statute.

### A. Federal Wiretapping Statute

Plaintiffs' allege a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C § 2510 *et seq.* (2000). The Act subjects to civil damages any person who "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical or other device to intercept, any oral communication when ... such device is affixed to ... a wire, cable, or other like connection used in wire communication ...." 18 U.S.C. § 2511(1)(b)(i); 2520(a). "Intercept" is defined as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any

electronic, mechanical or other device." § 2510(4).

### B. Inter-spousal Communication Exception

Defendant argues that Title III does not provide a cause of action for inter-spousal eavesdropping in the context of a domestic dispute. She points to precedent from the Second and Fifth Circuit Courts of Appeal and notes that the Circuits are currently split on the existence of an inter-spousal communication exception to the statute. *Compare Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir.1977) (recognizing an exception to Title III where defendant recorded his spouse's telephone conversations with their child in anticipation of a custody dispute), *and Simpson v. Simpson,* 490 F.2d 803, 810 (5th Cir.1974) (recognizing an exception to Title III where defendant recorded his spouse's telephone conversations with another man in anticipation of divorce), *with Heggy v. Heggy,* 944 F.2d 1537, 1540 (10th Cir.1991) (finding that Title III applies to the interception of inter-spousal communications), *Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir.1989) (same), *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir.1984) (same) *and United States v. Jones,* 542 F.2d 661, 672–73 (6th Cir.1976) (same). The First Circuit has not ruled on the issue.

The Circuits that recognize the inter-spousal communication exception, however, impose two limitations on the availability of that exception. *Anonymous* and *Simpson* exempt interception of spousal communications from Title III provided that those communications occur primarily between the parties to a domestic dispute,

**3.** Defendant limits to Count I her contention that Plaintiffs' fail to state a viable claim and does not otherwise address the state law counts. The Court recognizes that a failure to find a federal cause of action for Count I could prevent the exercise of supplement jurisdiction over the two remaining state law counts. 28 U.S.C. § 1331 (1993); 28 U.S.C. § 1367(a) (1993).

such as between a spouse and her children or her paramour. *Anonymous*, 558 F.2d at 679 (contrasting "purely domestic" disputes with cases where defendants had "invaded the privacy of innumerable persons, known and unknown"); *Simpson*, 490 F.2d at 805 (questioning a federal remedy for the "personal acts" of one's spouse within the marital home). These Courts further require that the spousal eavesdropping, absent surreptitious recording, fall within the legislatively created extension telephone exception to Title III. 18 U.S.C. § 2510(5)(a)(i); *Anonymous*, 558 F.2d at 678–79; *Simpson*, 490 F.2d at 809.

### 1. Communications Between Parties to a Domestic Dispute

■ The Court need not address the availability of the inter-spousal communication exception in this Circuit. The present case does not meet the exception even as applied in the Second and Fifth Circuits because it involves primarily non-domestic communications. The parties agree that the intercepted communications were largely business related.[4] Thus traffic on the recorded line necessarily involved conversations between many more individuals than Mr. Britton and his immediate family.[5] For the purposes of completeness, however, the Court moves on to consider the second requirement of the inter-spousal communication exception.

### 2. Extension Telephone Exception

■ *Anonymous* and *Simpson* also require that the intercepted communications, absent a recording device, otherwise qualify for the statutory exception to Title III. Electronic surveillance is not actionable under the statute when accomplished through "any telephone or telegraph instrument, equipment or facility ... furnished by such subscriber or user [of a wire or electronic communication service] for connection to the facilities of such service and used in the ordinary course of its business ...." § 510(5)(a)(i). This nonactionable eavesdropping is commonly referred to as the extension telephone exception to Title III. *See Williams v. Poulos*, 11 F.3d 271, 279 (1st Cir.1993). Application of the exception turns both on the type of equipment used to eavesdrop and on the use of that equipment in the ordi-

---

**4.** Defendant does not deny Plaintiffs' statement that the telephone is "almost exclusively used for business purposes." (*See* Pls.' Opp'n Statement of Material Facts at ¶ 7 (Docket # 11).) As discussed above, she instead makes only an ineffectual general objection to the statement. (*See* Def.'s Resp. to Pls.' Opp'n Statement of Material Facts at ¶ 7 (Docket # 15).) Moreover, Defendant makes a qualified admission to the significant percentages of interstate and international calling on the Double D line (*See id.*). Because the qualified admission is not accompanied by a citation to the record, the Court disregards the qualification pursuant to local rule 56. *See* D. Me. Loc. R. 56(e). Thus, both statements are included as part of the summary judgment record and inform the Court's reasoning.

**5.** Defendant points to *Lizza v. Lizza*, 631 F.Supp. 529 (E.D.N.Y.1986) to minimize the significance of third-party participation in the recorded conversations. Although the *Lizza* Court does appear to extend the reach of *Anonymous* to spousal recording of conversations encompassing third parties, *id.* at 533, the decision imposes a significant limitation on this holding. *Lizza* emphasizes that the defendant wiretapped his own telephone within the family home. *See id.* at 533.

Defendant maintains that *Lizza* is implicated in the instant case because Double D "had an extension within what was clearly the residential area of the Brittons' home." (*See* Def.'s Mot. to Dismiss at 6 (Docket # 5).) However, the parties dispute the characterization of the Double D line as part of the marital home. Because the Court must view the record in the light most favorable to Plaintiffs, it does not consider *Lizza* applicable under these controverted facts. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997).

nary course of business. *See id.* (addressing the "telephone or telegraph" equipment requirement); *Campiti v. Walonis*, 611 F.2d 387, 392 (1st Cir.1979) (discussing the meaning of "in the ordinary course of its business").

In addition to encompassing third-party communications, however, the present case also fails to meet the extension telephone requirement of the inter-spousal communications exception. The parties dispute whether the Double D extension line was "separate" from the Britton residence and whether the line rang within the marital home. (*See* Pls.' Opp'n Statement of Material Facts at ¶ 6 (Docket # 11).) Conflicting evidence exists from which a trier of fact could either characterize the Double D line as part of the Britton's marital home or as part of the trucking business. The parties have thus raised a trialworthy issue regarding the characterization of the extension line. *Basic Controlex Corp. v. Klockner Moeller Corp.*, 202 F.3d 450, 453 (1st Cir.2000). Consequently, the Court cannot determine the applicability of the extension telephone exception to the Double D line from the summary judgment record. Because the inter-spousal communication exception is inapplicable on these facts, the Court does not address the availability of the exception more generally and Plaintiffs' Title III claim remains viable.

## IV. ABSTENTION

### A. *Colorado River* Abstention

■ Defendant alternatively requests that the Court abstain from exercising jurisdiction in this matter and instead defer to the Maine Court adjudging her divorce. Federal courts have discretion to abstain from exercising concurrent jurisdiction over a matter pending in a parallel state court proceeding if necessary to avoid duplicative litigation. *Col. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The decision to defer to a state court proceeding is left to the discretion of the district court. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The federal court may abstain provided "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. 927. The mere pendency of a parallel state court action does not bar the federal court from accepting jurisdiction over the matter. *Col. River*, 424 U.S. at 817, 96 S.Ct. 1236; *Burns v. Watler*, 931 F.2d 140, 145 (1st Cir.1991). In actions for damages, such as the present case, a federal court may only choose to stay the federal proceeding and cannot dismiss the action. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *DeMauro v. DeMauro*, 115 F.3d 94, 98 (1st Cir.1997).

Defendant contends that if the Court finds a cause of action under Title III, it should stay the matter pending the outcome of the Maine divorce proceeding, which Defendant alleges is "parallel" to the instant action. Abstention to avoid duplicative litigation is grounded in concerns of "wise judicial administration." *Col. River*, 424 U.S. at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). A federal damages suit is stayed due to the existence of a concurrent state proceeding only in "exceptional" circumstances given the "virtually unflagging obligation" of the federal courts to exercise their jurisdiction. *Currie v. Group Ins. Comm'n*, 290 F.3d 1, 9–10 (1st Cir.2002) (quoting *Col. River*, 424 U.S. at 817–18, 96 S.Ct. 1236).

### B. *Colorado River* Factors

■ To determine whether such "exceptional" circumstances exist, courts consider

six factors: (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum to the parties; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls; and (6) whether state law will adequately protect the interests of the parties. *Burns,* 931 F.2d at 146 (citing *Moses H. Cone,* 460 U.S. at 25–26, 103 S.Ct. 927 and *Col. River,* 424 U.S. at 813, 96 S.Ct. 1236). Courts also consider the "vexatious and contrived" nature of the federal claim. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 12 (1st Cir.1990) (*"Villa Marina I "*). When balancing these factors, the Court's analysis must be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927. The individual weight accorded to each factor varies from case to case and no single factor is outcome determinative. *Id.; Col. River,* 424 U.S. at 818, 96 S.Ct. 1236.

### 1. Existence of a Parallel State Proceeding

■ Before addressing these factors, the Court must determine whether the divorce proceeding represents a sufficiently "parallel" proceeding to trigger *Colorado River* abstention. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 533 (1st Cir.1991) (*"Villa Marina II "*). Suits are parallel where substantially the same parties litigate substantially the same issues in the state and federal forums. *McLaughlin v. United Va. Bank,* 955 F.2d 930, 935 (4th Cir.1992); *Ambrose v. New England Ass'n of Schs. and Colls.,* 100 F.Supp.2d 48, 50 (D.Me.2000). On the one hand, state and federal suits are not sufficiently parallel to trigger *Colorado River* where each case is based on different underlying facts and different legal theories. *Ambrose,* 100 F.Supp.2d at 50. On the other hand, exact similarity of the

issues is not a prerequisite of abstention. *Villa Marina II,* 947 F.2d at 533.

Defendant maintains that a resolution of the underlying divorce will likely resolve all issues among the parties in this case. While the parties to the two proceedings are similar, the cases are based on different underlying facts and legal theories. The success of Plaintiffs' Title III claim, as well as their state law claims, turns on the ability to establish that Defendant intercepted communications on the Double D line. In contrast, the protective order issued by the Maine Court precludes any consideration of Defendant's alleged recordings in the divorce. The legal theories employed in the divorce instead turn on the valuation of the trucking business and its impact on the distribution of marital assets. The present action and the pending divorce proceeding are not sufficiently parallel to implicate the *Colorado River* doctrine. Nonetheless, the Court proceeds to consider the applicability of the *Colorado River* factors to the present case in the interest of thoroughness.

### 2. Jurisdiction Over a Res

■ Defendant relies most heavily on the first of the *Colorado River* factors. She argues that the Maine Court asserted jurisdiction over the res of any recordings in its September 21, 2000 protective order. A federal court must decline jurisdiction over an in rem action involving a res already subject to state court in rem jurisdiction. *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 44 (1st Cir.1991). The *Princess Lida* doctrine applies "where, to give effect to its jurisdiction, the court must control the property." *Id.; cf. Bergeron v. Estate of Loeb,* 777 F.2d 792, 797 (1st Cir.1985) (upholding federal jurisdiction despite state

court exercise of statutory in rem jurisdiction where federal plaintiff merely sought adjudication of his rights in trust). The doctrine is "abstention-related" and implicates the same prudential concerns for judicial economy as the *Colorado River* doctrine. *See Carvel v. Thomas and Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999).

The state court protective order reads in pertinent part: "The Plaintiff [Defendant Britton] is prohibited from using any type of recordings of telephone conversations of the Defendant, or information derived therefrom, *in these proceedings*. The Plaintiff may not be compelled to produce such tapes after having invoked her privilege against self-incrimination." (*See* Def.'s Aff. at Ex. A(I) (Docket # 6)) (emphasis added). Under Maine domestic relations law the District Court has original jurisdiction in the divorce matter. 4 M.R.S.A. § 152(11) (Supp.2001). In exercising this power, it may assert jurisdiction over a res, namely marital property, by issuing an order pending a final divorce decree. 19–A M.R.S.A. § 904(5) (1998). The Court's protective order, however, was not issued pending a final decree and does not assert in rem jurisdiction. Instead, the state Court issued the order for the limited purpose of protecting Defendant's asserted privilege against self-incrimination during the discovery process. *See* Me. R. Civ. Proc. 26(c).[6] Rather than asserting control over any recordings, the protective order merely prevents their discovery and use in the divorce proceeding.

 Moreover, even assuming that the Maine Court has exercised jurisdiction over the recordings, the proceedings before this Court are not in rem. A proceeding is in rem where a court bases its jurisdiction upon control of real or personal property within its territorial reach. *See United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1309 (10th Cir. 1994); *see also FleetBoston Fin. Corp. v. FleetBostonFinancial.com*, 138 F.Supp.2d 121, 129 (D.Mass.2001). Under the instant facts, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and need not exercise any control over the recordings to proceed. Because the Maine Court has not asserted jurisdiction over the recordings and this Court has not instituted an in rem action such that it "must have control over" the recordings, the first *Colorado River* factor is not implicated under these facts.

### 3. Remaining *Colorado River* Factors

Defendant argues that the Federal Court sitting in Bangor, Maine is inconvenient, as both parties reside in Houlton, Maine. The Court notes that two forums are separated by approximately 120 miles along Interstate 95 and does not consider this direct commute so inconvenient as to warrant weighing any resulting travel difficulties in Defendant's favor. *See Burns*, 931 F.2d at 147 ("[A] two-hour drive does not denote a degree of inconvenience that should significantly influence the question of whether the proceedings in the federal court should be stayed.").

As to the third factor, desirability of avoiding piecemeal litigation, Defendant maintains that this Court's failure to abstain poses the risk of inconsistent court

---

**6.** Under Rule 56(c) "Protective Orders," the Maine District Court Judge may make:

any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including without limitation one or more of the following: (1) that discovery

not be had; ... (3) that discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters ....

Me. R. Civ. Proc. 26(c).

orders regarding the recordings. Piecemeal litigation results where the potential may exist for harmful inconsistent determinations in the state and federal forums. *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991); *Ambrose*, 100 F.Supp.2d at 51–52. As discussed above, however, there is no potential for conflicting determinations because the Maine Court's protective order merely prevents the recordings from being considered in the divorce proceeding. The order does not reach beyond discovery in the divorce and thus weighs against abstention.

 The sequence in which the forums obtained jurisdiction need only be briefly addressed. Although the divorce court obtained jurisdiction prior to this Court, the factor is a flexible one, requiring a court to look beyond the date of filing and to examine which suit is more advanced. *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927; *Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc.*, 48 F.3d 46, 52 (1st Cir.1995). Because the suits do not significantly overlap and the Title III claim has not been developed in the divorce proceeding, the order of jurisdiction does not weigh in Defendant's favor.

 The fifth factor militates strongly in favor of this Court retaining jurisdiction. Though the presence of state law issues may in "rare circumstances" weigh in favor of abstention, "the presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction]." *Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. 927. Such rare circumstances exist only when a case raises novel or complex questions of state law. *Villa Marina I*, 915 F.2d at 15. Section 2520 of Title III creates independent federal question jurisdiction, providing an exclusively federal source of law for Plaintiffs' claim. *See id.* at 26 n. 32; *Shaver v. Shaver*, 799 F.Supp. 576, 577 (E.D.N.C. 1992) (weighing exclusively federal source of Title III action brought under section 2520 in favor of federal jurisdiction). Given the federal source of Plaintiffs' Title III claim and the absence of complex or novel questions of state law better decided by the divorce proceeding, the source-of-law factor weighs decidedly against abstention.

Regarding the ability of state law to protect the parties' interests, Defendant argues that resolution of the pending divorce will "effect a resolution of all issues between Mr. and Ms. Britton, Mr. Britton's business, and his business partner ...." (*See* Def.'s Mot. to Dismiss at 10 (Docket #5).) The Court fails to recognize how a distribution of assets pursuant to a divorce decree can redress any alleged injuries arising from Defendant's electronic surveillance. The divorce proceeding is wholly inadequate to protect against the harms to Plaintiffs' privacy alleged in this matter.

Plaintiffs' suit may be of a vexatious or reactive nature. Plaintiffs' brought their action after the divorce had become contentious and when the dispute regarding the valuation of the trucking company was particularly heated. However, because the potentially reactive nature of the federal action is the only factor weighing in favor of abstention, even assuming the suit is vexatious, the Court finds that, on balance, abstention is not warranted under these facts. *Col. River*, 424 U.S. at 819, 96 S.Ct. 1236 (finding that no one factor is determinative and urging a consideration of the "combination of factors").

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion.

SO ORDERED.