**Vernon FRIERSON, Plaintiff–Appellant,**

v.

**Tommy GOETZ, Defendant–Appellee.**

No. 02–6522.

United States Court of Appeals, Sixth Circuit.

May 19, 2004.

Phillip L. Davidson, Nashville, TN, for Plaintiff–Appellant.

Patrick A. Flynn, Fleming, Flynn & Sands, Columbia, TN, for Defendant–Appellee.

Before MERRITT and MOORE, Circuit Judges; and DUGGAN, District Judge.[*]

MERRITT, Circuit Judge.

Plaintiff Vernon Frierson, a police officer whose telephone conversation was overheard by defendant Tommy Goetz, also a police officer, appeals a grant of summary judgment on the ground of qualified immunity. Plaintiff brought this action against defendant in his individual capacity for (1) a claim pursuant to 42 U.S.C. § 1983 that defendant violated the Fourth Amendment to the United States Constitution by violating plaintiff's right to be secure in his person against unreasonable searches and for invasion of his reasonable expectation of privacy, and (2) a claim under Title III of the Omnibus Crime Control and Safe Streets Act of 1968. as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510–2522, also known as the Federal Wiretap Act, when he unlawfully intercepted communications plaintiff made while talking on a cordless telephone. The plaintiff also asserts state law claims of false light and invasion of privacy, which were dismissed without prejudice below. The plaintiff also brought a claim of malicious prosecution, which was dismissed below with prejudice. For the following reasons, we affirm the judgment of the district court.

## I.

### FACTS

Plaintiff Vernon Frierson was a regular police officer in Lewisburg, Tennessee. Defendant Tommy Goetz was an investigative police officer in Mt. Pleasant. Tennessee, who was assigned to the Maury County Drug Task Force. In September 2000, the Maury County Drug Task Force began investigating a suspect named Michael Wright for drug distribution at his place of business in Columbia, Tennessee. The business was placed under twenty-four hour surveillance. During that surveillance, Wright was observed using a cordless telephone. On November 8, 2000, Officer Goetz placed a scanner in his police car to intercept communications conducted over the cordless telephone. In a separate car, he placed another scanner and a recorder attached to it to record the communications intercepted by the scanner. While monitoring the scanner. Officer Goetz overheard communications between Wright and an unknown person pertaining to a possible drug transaction. Based upon this information, Goetz appeared before the Honorable Jim T. Hamilton, Cir-

[*] The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

cuit Court Judge for Maury County, Tennessee, to obtain an order "authorizing the preservation, retention and continued recording of protected communications pursuant to Tenn.Code Ann. § 39–13–604," the Tennessee statute that sets forth the procedures for intercepting cordless and cellular phones in the course of criminal investigations. The application was granted by the court. Goetz subsequently showed Assistant District Attorney Brent Cooper the application and order and was advised by Cooper that he had followed the applicable procedures set forth in Tenn.Code Ann. § 39–13–604(f) to record cordless telephone transmissions.

On November 9, 2000, Officer Mike Johnson of the Maury County Drug Task Force telephoned the plaintiff to inquire about Michael Wright. Officer Johnson was interested in the locations of Wright's business and residence and believed that because plaintiff worked and lived near Wright, he would be familiar with him. Defendant claims that plaintiff was informed at that time that the questions were with regard to an ongoing investigation of Wright. The plaintiff, however, disputes this and contends that he did not receive any indication that Wright was under investigation.

On November 10, 2000, a conversation between an individual named Wright and Bennie Collins was intercepted by the Drug Task Force. In that conversation, Collins told Wright that plaintiff wanted to talk to him. Wright asked for the plaintiff's telephone number and immediately after hanging up with Collins he dialed plaintiff's number. The defendant and Officer Brian Cook allege that during that phone call plaintiff first inquired if Wright was on a cellular telephone to which Wright answered in the negative. The plaintiff then proceeded to tell Wright that Wright was being watched by the police,

that he needed to be careful when using the phone, that he needed to dispose of his "stash" and that he should "lay low." Plaintiff disputes this assertion and alleges that the two men only conversed about Wright's ex-girlfriend. There is no recording of this conversation. A few minutes after hanging up, Wright placed a call to Southwest Airlines.

Defendant contacted Assistant District Attorney Bob Sanders to determine if there was sufficient probable cause to arrest Wright and plaintiff based on the intercepted phone call. Sanders advised defendant that there was, and Officer Cook applied for and was issued an arrest warrant for plaintiff. Plaintiff was subsequently arrested that day by Officer Cook. Wright was charged and later convicted of possession of cocaine with intent to resale. Plaintiff was indicted for conspiracy to sell and/or deliver cocaine and accessory after the fact of the sale and delivery of cocaine. However, the evidence obtained through the intercepted phone call of plaintiff and Wright was later suppressed by Judge Hamilton because he found that, although the officers accurately followed the procedures set forth in Tenn.Code Ann. § 39–13–604(f) for intercepting and recording cordless telephone communications, the procedures under the Federal Wiretap Act were not followed. Because he held that the federal law preempted Tenn.Code Ann. § 39–13–604, he suppressed the evidence from the phone call. Despite the dismissal of the charges, plaintiff was subsequently fired from his job as a police officer as a result of the incident.

**II.**

Title III of the Omnibus Crime Control and Safe Streets Act, referred to herein as the Federal Wiretap Act, sets forth standards and procedures for the use of electronic surveillance, as well as criminal and

civil penalties for the violation of the Act. Specifically, section 2511 of the Federal Wiretap Law subjects to criminal sanctions or suit by the government any person who "willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication...." 18 U.S.C. § 2511(a)(1). Section 2518 sets forth the procedures to be followed to apply for an intercept order. Section 2520(a) provides that "any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate." That same section of the statute also provides a "good faith" defense. Section 2520(d) specifically provides that "(1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization ... is a complete defense against any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2520(d). It is clear that defendant's surveillance and interception of plaintiff's cordless phone violated the federal statute because the procedures set forth in Section 2518 (requiring a showing that less intrusive alternatives to wiretapping were tried before wiretapping) were not followed, but we find that the "good faith" defense in Section 2520 applies to excuse defendant from liability.

Three sets of laws covering interception of communications come into play in this case: The Federal Wiretap Law, 18 U.S.C. §§ 2510–2522: The Wiretapping and Electronic Surveillance Act of 1994. Tenn. Code Ann. §§ 40–6–30, et seq., known as the Tennessee Wiretap Law, and the Tennessee law covering the interception of cordless and cellular telephones, Tenn. Code Ann. § 39–13–604 ("Cordless and cellular phone transmissions; recording or dissemination"). The Tennessee Wiretap Law, Tenn.Code Ann. §§ 40–6–30. et seq., parallels the Federal Wiretap Law in prohibiting the unauthorized interception and disclosure of oral communications and in requiring certain procedures to obtain an order. However, the federal law was amended in 1994 to include cordless phones, but the Tennessee law has not been similarly amended. Therefore, the Tennessee Wiretap Law in effect at the time of the interception here, and still in effect today, does not cover cordless phones. Tenn.Code Ann. § 40–6–303(19) (definition of "wire communication" specifically excludes cordless telephone communications). Instead, a separate statute. Tenn.Code Ann. § 39–13–604. covers interceptions of cordless phones. Section 39–13–604(f), under which defendant proceeded, does not require that the person seeking the wiretap, generally law enforcement personnel, to give the same information to the court as that required by the federal and state wiretap laws and is therefore generally easier to obtain. While this section is now arguably preempted by the federal statute covering cordless phones, it has not been held by a federal court or the Tennessee Supreme Court to be preempted by the Federal Wiretap Law.

■ Against the backdrop of this somewhat confusing array of applicable laws, we turn to the facts of this case. Before undertaking the surveillance of Wright's phone, defendant obtained a valid court order from a state court judge, in accordance with Tenn.Code Ann. § 39–13–604(f), the Tennessee law covering cordless phones. By obtaining an ostensibly valid court order and relying on a state statute still in effect, defendant falls within two of the recognized authorizations under Section 2520 that provide a good faith defense to liability under the federal statute: "a court warrant or order" and "a statutory

authorization." 18 U.S.C. § 2520(d)(1). In addition to receiving a valid court order, defendant also went to the local district attorney, who also agreed that the court order and resulting surveillance were proper.

In arguing that the good faith defense does not apply, plaintiff does not contend that the court order is invalid or that the statute on which defendant relied, Tenn. Code Ann. § 39–3–604, is no longer good law. Instead, plaintiff argues that the good faith defense cannot apply here because defendant knew of the existence of the federal law and its coverage of cordless phones, but sought to avoid the restrictions in the federal law by looking solely to the state law. Defendant testified that although he knew of the existence of the federal law, he believed it did not apply to the type of cordless phone he wanted to tap and that he was correct in following the state statute instead of the federal statute. Plaintiff has not offered any evidence to refute this testimony except for his own belief about defendant's motives; nor has he offered any other credible evidence that defendant willfully ignored the federal law.

Because the evidence demonstrates that defendant held an honest and reasonable belief that he acted legally pursuant to a valid court order issued in accordance with state law, we hold that the good faith defense in Section 2520(d)(1) applies.

### III.

■ It is less clear whether the interception of the cordless phone call also violated the Fourth Amendment, but we agree with the district court that defendant has qualified immunity from such a claim if there were a violation. We have used a three-part test to determine whether an official is entitled to qualified immunity. First, we must determine whether "[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)); *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir.1996). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at 201; *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The third step is to determine whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right. *See Saucier,* 533 at 202 (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818(1999)).

A decade ago, courts considered two factors important in denying Fourth Amendment protections to the users of cordless telephones. The first is that such telephones broadcast radio signals from the receiver in all directions, thereby making conversations open to the public. The second is that the Federal Communications Commission has ordered that cordless telephone base units bear the legend "privacy of communications may not be ensured when using this phone," as did the phone used by Wright to call plaintiff. With such a warning, a court may well reason that no one using the phone can reasonably expect privacy.

The situation has changed, however, since the first cordless phones were in use and conversations on modern cordless phones are not as readily intercepted. Newer cordless phones "monitor all available frequencies and automatically select one that is unused," "broadcast on radio frequencies not utilized by commercial ra-

dio," and "actually scramble the radio signal." *United States v. Smith*, 978 F.2d 171, 179 (5th Cir.1992). The court in *Smith*, after taking note of these changes, concluded that because of the wide variety of cordless phones in use there exists no "general rule that it either is or is not reasonable to expect privacy for cordless telephone conversations." *Id.* ("the reasonableness of any expectation of privacy for a cordless phone will depend, in large part, upon the specific telephone at issue."). This was the situation at the time of the intercept of Wright's phone in 2001. Therefore, in the Fourth Amendment criminal search and seizure context, interception of a message conveyed using a cordless phone may or may not have been made with a reasonable expectation of privacy, depending upon the nature of the cordless telephone technology used.

Because we have not been presented with enough facts in this case to decide this novel issue concerning privacy expectations in cordless phones, we can only conclude that plaintiff has attempted to allege a constitutional violation. We are unable to conclude, as a matter of law, that the interception of a cordless telephone, in the circumstances alleged, violated the Fourth Amendment. We find no cases that would, in such novel situations, require us to answer conclusively the constitutional question as a matter of law before proceeding to steps two and three.

The answer is clear, however, when we turn to the questions of whether the alleged constitutional violation was "clearly established" at the time it occurred and whether a reasonable person in defendant's position would have known that his actions violated clearly established rights. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("the right the official is *alleged to have violated* must have been 'clearly established' in a

... particularized sense" and must be "sufficiently clear that a reasonable official would understand that what he is doing violated that right.") (emphasis added); *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir.1999). The right to privacy in using a cordless phone is not "clearly established." As explained above, prior to the amendment to the Federal Wiretap Law in 1994 to cover cordless phones, courts uniformly held that cordless telephone users did not have a reasonable expectation of privacy in their phone conversations under the Fourth Amendment. *See. e.g., McKamey v. Roach*, 55 F.3d 1236 (6th Cir.1995) (collecting cases). To date neither the Supreme Court nor the Sixth Circuit has specifically addressed whether a reasonable expectation of privacy exists under the Fourth Amendment for cordless telephone communications. We therefore agree with the district court that the law is not "clearly established" that users of cordless phones have a reasonable expectation of privacy under the Fourth Amendment.

Furthermore, a reasonable person in defendant's position would not know that his actions violated the Fourth Amendment for the same reasons set forth above to establish the good faith defense to liability under the federal statute. Defendant obtained an ostensibly valid court order in reliance on Tennessee law by a Tennessee judge and received verification of its propriety from the local district attorney. We therefore agree with the district court that defendant has qualified immunity from liability for a Fourth Amendment violation.

For the foregoing reasons, we affirm the judgment of the district court.