**Clifton S. FREEDMAN, Plaintiff,**

v.

**AMERICA ONLINE, INC., Defendant.**

**No. 1:04CV475.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 12, 2004.

640

Clifton S. Freedman, Pro se.

Samir Jain, Joseph James, Charles Colin Rushing, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, for Defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

In this transferred diversity action, plaintiff brings claims under Title II of the Electronic Communication Privacy Act ("ECPA"), 18 U.S.C. § 2701 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. St. § 42–110a *et seq.*, on the ground that defendant, an internet service provider ("ISP"), wrongfully disclosed plaintiff's subscriber information to a Connecticut law enforcement officer in response to a warrant application that had not been signed by a judge. At issue on cross motions for summary judgment are the following questions:

(i) whether the "knowing or intentional state of mind" necessary to establish an ISP's liability in a civil action for an ECPA disclosure violation requires a showing of specific intent and knowledge or merely a showing that the disclosure was intentional, not inadvertent,

Or, in terms specific to this case,

Whether plaintiff here must show that the AOL employee who made the disclosure did so with knowledge that the warrant was unsigned or merely that the employee intended to make the disclosure and did not do so inadvertently;

(ii) whether AOL is entitled to the statutory good faith defense where, as here, it appears that the warrant was unsigned, but AOL's employee mistakenly thought otherwise; and

(iii) whether plaintiff may assert a Connecticut statutory claim against AOL given that this matter was transferred from the United States District Court for the District of Connecticut on the ground that the parties' contract contained a forum selection clause stating that Virginia courts would have exclusive jurisdiction over all disputes between the parties and that Virginia law would govern disputes pertaining to the parties' contract and plaintiff's AOL membership.

## I.

Plaintiff Clifton Freedman, a Connecticut resident, is a subscriber of defendant America Online, Inc. ("AOL")'s Internet service. AOL is a Delaware corporation with its principal place of business in Dulles, Virginia. It is a wholly-owned subsidiary of AOL Time Warner, Inc., and the world's largest Internet Service Provider ("ISP"), with more than 30 million subscribers, or "members," worldwide.

The relationship between AOL and each of its subscribing members is governed by the Terms of Service ("TOS"), which includes the Member Agreement, the Community Guidelines, and the Privacy Policy. AOL's Privacy Policy, distributed to each subscriber with the Member Agreement, states that AOL will not disclose a subscriber's telephone numbers, credit information, or screen names, unless authorized by the subscriber to do so, except in response to "valid legal process such as a search warrant, subpoena or court order...." And while AOL alleges it makes every effort to abide by the terms of the Privacy Policy, the Member Agreement is plainly aspirational only, as it makes unmistakably clear that the Privacy Policy does not and is not intended to confer any rights and remedies upon the subscriber and that it, the Member Agreement, "represents [the subscriber's] entire agreement with AOL." Also of note here is that the Member Agreement contains (i) a forum selection clause stating that Virginia courts have "exclusive jurisdiction [over] any

claim or dispute with AOL or relating in any way to [the subscriber's] membership or use of AOL" and (ii) a choice-of-law provision stating that "[t]he laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Agreement and your membership."

While not directly relevant to the issues at bar, it is worth noting that this dispute has its genesis in the 2001 campaign for First Selectman in the Town of Fairfield, Connecticut. During that campaign, a Fairfield fireman popularized a political slogan, "Go John Go Away," that was widely displayed on bumper stickers, balloons, and other campaign paraphernalia throughout Fairfield and intended to encourage voters not to vote for John Metsopoulous, the Republican candidate. Mary Carol Mirylees, who was defeated by Metsopoulous in the Republican primary, and several of her supporters, including Sandy Mulligan, Dee Dee Brandt, Kathy Siano, and Vincent Biondi, allegedly used the "Go John Go Away" slogan in their campaign to defeat Metsopoulous.

Mirylees decided to run again in the 2003 Republican primary for First Selectman. On March 31, 2003, plaintiff, an active member of the Republican party in Fairfield and a candidate for a position on the Fairfield Board of Education, sent an e-mail to approximately ten individuals, including Mulligan, Brandt, and Siano, managers of Mirylees' 2003 campaign, under the screen name "GoMaryGoAway@aol.com," which stated "The end is near." On April 1, 2003, Mulligan and Brandt, unaware that plaintiff had sent the e-mail and concerned about their security, filed a report with the Fairfield Police Department.

That same day, Detectives William Young and David Bensey of the Fairfield Police Department, concerned about the harassing nature of the e-mail, executed a State of Connecticut Superior Court Search and Seizure Warrant Application ("Warrant Application") seeking the disclosure by AOL of the identity of the person using the "GoMaryGoAway" screen name as well as other subscriber information relating to that person. After he and Detective Bensey signed the application under oath, but without first obtaining the signature of a judge, Detective Young faxed the warrant application to AOL's law enforcement help line.

In the five-page warrant application, Detectives Young and Bensey stated that they had probable cause to believe that the individual who had sent the allegedly harassing e-mail was responsible for harassment in the second degree in violation of Connecticut law and that they based this belief on the statements of Mulligan and Brandt. The warrant application was properly signed by both Detectives Young and Bensey on pages two, three, and four. Although Detective Bensey signed, arguably illegibly, on a line reserved for the signature of the affiant, his signature in fact appears on a line just above the words "Signed (Judge of the Superior Court)." The juxtaposition of these words and Detective Bensey's signature might lead a reader to assume, incorrectly, that Detective Bensey's signature is that of a judge. But careful review of the form discloses that there is a line below the words "Signed (Judge of the Superior Court)" that is meant for the judge's signature and this line is blank. Nor is the form signed anywhere else by a judge. Moreover, no signature, including that of Detectives Young and Bensey, appears on page five, even though the warrant appears to require the signature of a judge on that page.

When AOL received the warrant application fax, it was forwarded to AOL's legal department, which is responsible for AOL's compliance with warrants. Worth noting in this regard, is that AOL typical-

ly responds to approximately 1000 warrants per month from authorities all over the country. On April 7, 2003, Jennifer Sheridan, an AOL compliance and fraud investigator responsible for responding to warrants and court orders, concluded the warrant was valid and faxed plaintiff's subscriber information to Detective Young in response to the warrant application. The six-page fax included (i) one page that set forth plaintiff's name and address, phone numbers, account status and type, membership start date, software information, billing and account information, and screen names and (ii) a five-page list of plaintiff's session times and activity.

Detective Young subsequently disclosed this information to Mulligan and Brandt. Thereafter, on April 11, 2003, Biondi, a political advisor and campaign manager for Mirylees who had become aware that plaintiff had sent the e-mail, told plaintiff that he, Biondi, would ensure that the information concerning plaintiff's e-mail would not appear in the newspaper provided plaintiff drop out of the 2003 election for a position on the Fairfield Board of Education and resign his position as the District Leader of District 7 of the Republican Town Committee. Although it is not clear from the record whether plaintiff in fact dropped out of the election or resigned his position, plaintiff nonetheless alleges that he has suffered public ridicule, injury to his reputation, emotional distress, and loss of business as a consequence of the release of his subscriber information.

On June 12, 2003, plaintiff filed a complaint in the United States District Court for the District of Connecticut alleging eleven counts against AOL, Detective Young, Detective Bensey, and the Town of Fairfield. Of the eleven counts, three counts were asserted against AOL: (i) violation of the Electronic Communication Privacy Act, 18 U.S.C. § 2701 *et seq.* (Count I); (ii) breach of contract (Count II); and (iii) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. St. § 42–110a *et seq.* (Count III).[1] On November 20, in that district, plaintiff filed a partial motion for summary judgment as to Count I against AOL, Young, and Bensey and Counts X and XI against the Town of Fairfield and on November 21, AOL filed a motion to dismiss on the ground that the parties' Member Agreement forum selection clause provided that Virginia courts had exclusive jurisdiction over the three claims brought against AOL. On December 5, 2003, the United States District Court for the District of Connecticut granted AOL's motion to dismiss all claims against it on this ground. *See Freedman v. America Online, Inc., et al.,* Civil Action No. 03–1048–A (D.Conn. Dec. 5, 2003) (Order) (Dorsey, J.). Yet, the Connecticut court subsequently granted plaintiff's motion to reconsider this ruling and then vacated the dismissal order and transferred the claims against AOL to this district on the ground that " '[t]ransferring the AOL claims to the Eastern District of Virginia would prevent undue delay and avoid costs that [plaintiff] will incur if he is required to 'start from scratch' by refiling his case.' " *See Freedman v. America Online, Inc., et al.,* Civil Action No. 03–1048–

---

1. The remaining eight counts asserted against the other three defendants were: (i) violation of the ECPA against Detectives Young and Bensey and the Town of Fairfield (Count I); (ii) violation of the Fourth and First Amendments against Detectives Young and Bensey (Counts IV and V); (iii) violation of Article First, §§ 4 and 7 of the Connecticut Constitution against Detectives Young and Bensey (Counts VI and VII); (iv) invasion of privacy against Detectives Young and Bensey (Count VIII); (v) violation of the First and Fourth Amendments against Town of Fairfield (Count IX); (vi) indemnification pursuant to Conn. Gen.Stat. § 7–465 against Town of Fairfield (Count X); and (vii) respondeat superior as to Town of Fairfield (Count XI).

A (D.Conn. Jan. 30, 2004) (Order) (Dorsey, J.) (citing Pl.'s Mem.).[2]

At issue here are (i) AOL's cross-motion for summary judgment with respect to all three claims brought against it and (ii) plaintiff's motion for partial summary judgment with respect to the ECPA claim (Count I). In his motion, plaintiff withdrew his breach of contract claim (Count II). Accordingly, only the parties' motions with respect to the ECPA (Count I) and CUTPA (Count III) claims must be addressed here.

## II.

█ Congress enacted the ECPA in 1986 to protect against the interception and disclosure of information related to electronic communications. *See United States v. Hambrick*, 55 F.Supp.2d 504, 507 (W.D.Va.1999). The Act's paramount objective is to protect the privacy of persons in connection with the use of electronic and wire communications. *See In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir.2003). Title II of the Act regulates disclosures by ISPs of both subscriber information and the contents of its subscriber's communications.[3] *See Guest v. Leis*, 255 F.3d 325, 338 (6th Cir.2001); *see also* 18 U.S.C. § 2701 *et seq*. More specifically, § 2702(a)(3) states that an ISP, such as AOL,[4] violates the statute if it "knowingly divulge[s] a record or other information pertaining to a subscriber to or customer of such service," unless the disclosure comes within one of the six exceptions set forth in § 2702(c). *See* 18 U.S.C. § 2702(a)(3). The only exception listed in § 2702(c) relevant here is for disclosures "otherwise authorized in section 2703." 18 U.S.C. § 2702(c)(1). Authorized disclosures of a subscriber's record or information under § 2703(c) are those made pursuant to (i) a warrant, (ii) a court order, (iii) subscriber consent, (iv) a formal written request relevant to a law enforcement investigation concerning telemarketing fraud, (v) an administrative subpoena authorized by a Federal or State statute, or (vi) a Federal or State grand jury or trial subpoena.[5] *See* 18 U.S.C. § 2703(c).

2. The action proceeded in the District of Connecticut as to defendants Young, Bensey, and Fairfield and on February 4, 2004, that court granted plaintiff's partial motion for summary judgment with respect to Count I as to defendants Young and Bensey and denied the motion with respect to Counts X and XII as to defendant Fairfield. *See Freedman v. America Online, Inc.*, 303 F.Supp.2d 121 (D.Conn. 2004).

3. The discussion in this Memorandum Opinion focuses solely on the disclosure of plaintiff's subscriber record and information and not the contents of his communications. An ISP's disclosure of the contents of a subscriber's communications is subject to different rules set forth in §§ 2702(a)(1)-(2) and 2703(a)-(b).

4. It is clear that AOL is a provider of "electronic communication service" as the statute defines that term as "any service which provides to users thereof the ability to send or receive wire or electronic communications."

18 U.S.C. § 2510(15); *see also* 18 U.S.C. § 2711 ("As used in this chapter the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section.").

5. 18 U.S.C. § 2703(c) provides as follows:

(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity -
(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant;
(B) obtains a court order for such disclosure under subsection (d) of this section;
(C) has the consent of the subscriber or customer to such disclosure; or

Thus, an ISP violates § 2702(a)(3) if it discloses a subscriber's record or information in the absence of any of the six exceptions listed in § 2703(c). And, because AOL disclosed plaintiff's subscriber information in response to an unsigned warrant application, a circumstance not listed in § 2703(c), AOL properly concedes that it violated § 2702(a)(3).[6]

Although AOL concedes that a violation occurred,[7] it nonetheless contends that it is entitled to judgment as a matter of law on plaintiff's ECPA claim (i) because plaintiff offers no evidence that AOL violated the statute "with a knowing or intentional state of mind" as required by 18 U.S.C. § 2707(a), the statute's civil enforcement provision[8] and (ii) because AOL relied in good faith on the warrant application and thus is immune from liability under § 2707(e), the statute's good faith defense provision.[9] Plaintiff argues, to the contrary, that AOL's motion for summary judgment must be denied and plaintiff's

---

(D) submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing (as such term is defined in section 2325 of this title); or

(E) seeks information under paragraph (2).

(2) A provider of electronic communication service or remote computing service shall disclose to a governmental entity the -

(A) name;

(B) address;

(C) local and long distance telephone connection records, or records of session times and durations;

(D) length of service (including start date) and types of service utilized;

(E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

(F) means and source of payment for such service (including any credit card or bank account number),

of a subscriber to or customer of such service when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1).

6. Notably, the parties do not address § 2702(a)(3)'s requirement that, to establish a violation, a plaintiff must show that an ISP "knowingly divulge[d]" a subscriber's record or information. Because this element of the offense relates to AOL's state of mind in making the disclosure, it is discussed in greater detail in section (B) below.

7. AOL did not argue, as it might have given § 2703's inartful wording, that § 2703(c) authorizes an ISP to disclose certain types of information about a subscriber in response to a mere request from a law enforcement officer. Ultimately, however, that argument is unpersuasive because the structure of the Act clearly does not support the notion that a mere request for a subscriber's information by a law enforcement officer would suffice to require AOL to disclose the information, unless that request is pursuant to a telemarketing fraud investigation.

8. 18 U.S.C. § 2707(a) provides for a private cause of action for "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind...."

9. 18 U.S.C. § 2707(e) provides as follows:

A good faith reliance on -

(1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization (including a request of a governmental entity under section 2703(f) of this title);

(2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or

(3) a good faith determination that section 2511(3) of this title permitted the conduct complained of;

is a complete defense against any civil or criminal action brought under this chapter or any other law.

motion for summary judgment granted on the grounds that it is undisputed (i) that AOL acted with the requisite state of mind when it disclosed plaintiff's subscriber information and (ii) that AOL did not rely in good faith on a warrant or other valid legal process. Although not addressed by the parties, also at issue is whether plaintiff establishes that AOL "knowingly divulge[d]" plaintiff's subscriber information as required by 18 U.S.C. § 2702(a)(3). Thus, separately addressed here are the following questions:

(i) whether on the current record plaintiff has established that AOL violated the statute with a "knowing or intentional state of mind" as required by § 2707(a);

(ii) whether on the current record plaintiff has established that AOL "knowingly divulge[d]" plaintiff's subscriber information as required by § 2702(a)(3); and

(iii) whether on the current record AOL is entitled to judgment as a matter of law on the ground that it relied in good faith on the warrant application pursuant to § 2707(e).

### A.

Section 2707(a) provides that an ISP may be held civilly liable for any violation "in which the conduct constituting the violation is engaged in with a *knowing or*

*intentional state of mind.* . . . " 18 U.S.C. § 2707(a) (emphasis added). Thus, AOL argues that it cannot be held liable for violating the statute because Sheridan did not know that the warrant application was unsigned when she faxed plaintiff's subscriber information to Detective Young and thus did not act with a "knowing or intentional state of mind." Plaintiff contends, however, that AOL misinterprets § 2707(a)'s state of mind requirement and argues that to establish the requisite state of mind under that provision, plaintiff must show only that Sheridan acted intentionally, and not inadvertently. Because there is no dispute that Sheridan intended the disclosure, plaintiff contends he is entitled to judgment as a matter of law.

■ Plaintiff's argument on this point prevails as it finds firm support in the statutory language and history. By phrasing § 2707(a)'s state of mind terms in the disjunctive, Congress made clear that an ISP is liable for a prohibited disclosure if it acts either knowingly or intentionally. Thus, to establish the requisite state of mind under this provision, a plaintiff must show only that the ISP acted intentionally. And while the statute does not define "intentional" conduct, legislative history and authority interpreting Title I of the ECPA [10] offer significant guidance in this regard and make clear that an ISP acts intentionally provided its acts are not inadvertent.[11] Given this and because neither

---

**10.** Title I of the ECPA prohibits the intentional interception of "any wire, oral, or electronic communication" in the absence of judicial authorization. 18 U.S.C. §§ 2510 *et seq.* This portion of the Act is still commonly referred to as Title III because it amended Title III of the Omnibus Crime Control and Safe Streets Act governing the use of wiretapping. *See Davis v. Gracey,* 111 F.3d 1472, 1483 n. 10 (10th Cir.1997). It is, however, hereinafter referred to as Title I.

**11.** *See* S.Rep. No. 99–541, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3577 (stating that "[a]n 'intentional' state of mind means that one's state of mind is intentional

as to one's conduct or the result of one's conduct if such conduct or result is one's conscious objective"); *In re Pharmatrak, Inc.,* 329 F.3d at 23 (stating that ECPA Title I's requirement that interceptions be intentional excludes inadvertent interceptions); *Sanders v. Robert Bosch Corp.,* 38 F.3d 736, 742–43 (4th Cir.1994) ("The Act thus 'requires that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions.' ") (citing *Thompson v. Dulaney,* 970 F.2d 744, 748 (10th Cir.1992)); *Thompson,* 970 F.2d at 747 ("[T]he wording of [Title I of the ECPA], while broad, requires that interceptions be intentional before liability at-

party argues that Sheridan acted inadvertently when she disclosed plaintiff's subscriber information, plaintiff is entitled to judgment as a matter of law on this issue.

## B.

The foregoing conclusion does not, however, end the state of mind analysis for § 2702(a)(3) requires that plaintiff prove that AOL "knowingly divulge[d]" plaintiff's subscriber information to establish a statutory violation. *See* 18 U.S.C. § 2702(a)(3). Authority construing this language and pertinent legislative history makes clear that an ISP acts knowingly if it has knowledge of the factual circumstances that con-

stitute the alleged offense.[12] Section 2702(a)(3)'s knowledge requirement does not, however, require that AOL understand the legal significance of these factual circumstances or that AOL have the specific intent to violate the statute.[13] In fact, to make a disclosure violation turn on whether AOL acted with a bad faith intent to violate the statute would render the statute's good faith defense provision [14] superfluous, an impermissible result under the well-established rule "that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *See TRW, Inc. v.*

taches, thereby excluding inadvertent interceptions.").

**12.** *See* H.R.Rep. No. 99–647, at 64 (1986) ("The term knowingly [in § 2702] means that the Defendant was aware of the nature of the conduct, aware of or possessing a firm belief in the existence of the requisite circumstances and an awareness of or a firm belief about the substantial certainty of the result."); *Muskovich v. Crowell*, 1996 WL 707008, at *4–5 (S.D.Iowa Aug. 30, 1996) (citing legislative history); *see also* H.R.Rep. No. 99–647, at 48–49 (stating that with respect to [Title I of the ECPA] "a knowing state of mind is (1) an awareness of the nature of the conduct, (2) an awareness of or a firm belief in the existence of the circumstance and (3) an awareness of or a firm belief in the substantial certainty of the result."); *Peavy v. WFAA–TV, Inc.*, 221 F.3d 158, 178 (5th Cir.2000) (holding that the knowledge requirement of Title I was met on the grounds that "[i]t is undisputed defendants knew that the information they used and disclosed came from interceptions. It is also undisputed they were aware of sufficient facts concerning the circumstances of those interceptions such that they could, with presumed knowledge of the law, determine the interceptions were prohibited by law."); *Thompson*, 970 F.2d at 749 (stating that to be found liable under § 2511 of Title I "defendant must know 1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the in-

terception was prohibited in light of Title III"). *Cf. Morissette v. United States*, 342 U.S. 246, 270–71, 72 S.Ct. 240, 96 L.Ed. 288 (1952) ("But knowing conversion [under 18 U.S.C. § 641] requires more than knowledge that defendant was taking the property into his possession. He must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion."); *United States v. Fuller*, 162 F.3d 256, 260 (4th Cir. 1998) (stating that "[t]o act 'knowingly' [under 21 U.S.C. § 841(a)] is to act with 'knowledge of the facts that constitute the offense, but not necessarily with knowledge that the facts amount to illegal conduct, unless the statute indicates otherwise.' ").

**13.** *See Thompson*, 970 F.2d at 749 (presuming defendant's knowledge of the law when assessing whether defendant "kn[ew] or had reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation" of Title I); *cf. Fuller*, 162 F.3d at 260 (holding that 21 U.S.C. § 841(a)'s knowledge requirement does not require "knowledge that the facts amount to illegal conduct"). *Compare Ratzlaf v. United States*, 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) ("To establish that a defendant, 'willfully violat[ed]' the antistructuring law, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.").

**14.** 18 U.S.C. § 2707(e).

*Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)).[15] Because Sheridan knew (i) that AOL was an electronic communication service, (ii) that plaintiff was an AOL subscriber, (iii) that she disclosed plaintiff's subscriber information, (iv) to the Fairfield Police, a governmental entity, (v) pursuant to what appeared to be a warrant, there is no dispute that she knew all the factual circumstances that constitute the ECPA violation.[16] Accordingly, plaintiff is entitled to judgment as a matter of law as to whether AOL "knowingly divulge[d]" plaintiff's subscriber information. That Sheridan did not know that the warrant application was unsigned or that she was violating the ECPA by

making the disclosure does not compel a different conclusion.

## C.

◼ The parties also dispute whether even assuming Sheridan acted with the requisite state of mind, AOL is nonetheless entitled to judgment as a matter of law pursuant to Title II's good faith defense provision which provides that an ISP's "good faith reliance on a court warrant... is a complete defense to any civil or criminal action brought under this chapter...." 18 U.S.C. § 2707(e).[17] Although sparse,[18] authority interpreting this provision provides that an ISP relies in good faith on what appears to be a valid warrant provided its reliance is "objectively reasonable" under the circumstances.[19] Abundant authority interpreting Title I's nearly

15. *See also Commodity Futures Trading Comm'n v. Baragosh,* 278 F.3d 319, 327 (4th Cir.2002) ("Such an interpretation would be directly at odds with a cardinal rule of statutory construction—'that a statute should be interpreted so as not to render one part inoperative.'") (quoting *Mountain States Tel. & Tel. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985)). *Cf. Kratz v. Kratz,* 477 F.Supp. 463, 478 n. 36 (E.D.Pa.1979) ("Further evidence that 'willfully' as used in Title III does not mean with 'bad faith' is the § 2520 defense provided to those who rely in good faith upon a court order or legislative authorization. This defense would be 'surplusage' if willfully had such a meaning.").

AOL argues unpersuasively that the good faith defense provision would not be rendered completely superfluous even if the "knowing or intentional" state of mind element required proof of bad faith intent because § 2707(e) would still apply to criminal matters. *See* 18 U.S.C. § 2707(e) (section applies broadly to "any civil or criminal action brought under this chapter or any other law"). The obvious flaw in AOL's argument is that its interpretation of "knowing or intentional" would still render the good faith defense superfluous in civil cases, in clear contravention of Congress' intent. *See id.*

16. When determining the factual circumstances of the offense, it is necessary to read § 2702(a)(3) in conjunction with the excep-

tions to that general rule set forth in § 2702(b) & (c) and § 2703.

17. *See also Davis,* 111 F.3d at 1484 ("In addition to the enumerated exceptions, however, the statute contains the general good faith defense of section 2707(e) for reliance on a warrant."); *Organizacion JD Ltda. v. U.S. Dept. of Justice,* 18 F.3d 91, 94 (2d Cir.1994) ("We agree with the district court that the defendant banks cannot be held civilly liable under § 2707(a) for a violation of § 2701 because their good faith reliance on a court warrant or order is a complete defense under § 2707(d)(1)."); *Manufacturas International, LTDA v. Manufacturers Hanover Trust Co.,* 792 F.Supp. 180, 192–93 (E.D.N.Y.1992) ("Good faith reliance on a court warrant or order is also a complete defense under the statute.").

18. *See Davis,* 111 F.3d at 1482 ("There are few cases interpreting the reach of the substantive provisions of the ECPA or applying the good faith defense to violations of Title II of the ECPA.").

19. *See Davis,* 111 F.3d at 1484 ("To be in good faith, the officers' reliance must have been objectively reasonable.") (citing *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *United States v. Bach,* 2001 WL 1690055, at *5 (D.Minn. Dec. 14, 2001) (concluding that the good faith ex-

identical good faith defense, 18 U.S.C. § 2520(d),[20] offers additional guidance with regard to the elements of the good faith defense under Title II. This authority teaches that a defendant may invoke the good faith defense "if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable." *Jacobson v. Rose*, 592 F.2d 515, 523 (9th Cir.1978).[21] From this, it follows that to establish good faith reliance here, AOL must show (i) that Sheridan had a subjective good faith belief that she disclosed plaintiff's subscriber information pursuant to a signed, valid warrant and (ii) that this belief was objectively reasonable in the circumstances.

■ Interestingly, however, both parties here appear to agree that the good faith defense is governed not by these principles, but instead by the standard set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), in which the Supreme Court held that evidence obtained during an invalid search must not be suppressed pursuant to the Fourth Amendment exclusionary rule's good faith exception if the law enforcement officer conducting the search reasonably relied on an invalid warrant. *See Leon*, 468 U.S. at 923 n. 23, 104 S.Ct. 3405; *United States v. Bynum*, 293 F.3d 192, 194–96 (4th Cir.2002); *United States v. Carter*, 139 F.3d 424, 435 (4th Cir.1998). And although the parties do not dispute that *Leon* provides the appropriate standard with which to resolve § 2707(e) good faith claims, they disagree as to whether *Leon* and its progeny establish that AOL's reliance on an unsigned warrant is *per se* unreasonable such that the plaintiff is entitled to judgment as a matter of law. This disagreement reflects the existing split of authority on this issue.[22] In any event, it

---

ception does not apply because "there is no argument that Schaub reasonably relied on the express terms of the warrant when he faxed it to Yahoo"); *Manufacturas Internacional, LTDA.*, 792 F.Supp. at 193 ("The banks ... are protected because of their reasonable belief that they were acting in compliance with a lawfully issued court order.").

**20.** 18 U.S.C. § 2520(d) provides as follows:

A good faith reliance on -
(1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization;
(2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or
(3) a good faith determination that section 2511(3) or 2511(2)(i) of this title permitted the conduct complained of;
is a complete defense against any civil or criminal action brought under this chapter or any other law.

**21.** *See also Frierson v. Goetz*, 99 Fed.Appx. 649, 652, 2004 WL 1152172, at *4 (6th Cir. 2004) (unpublished disposition) ("Because the evidence demonstrates that defendant held an honest and reasonable belief that he acted legally pursuant to a valid court order issued in accordance with state law, we hold that the good faith defense in Section 2520(d)(1) applies."); *Kilgore v. Mitchell*, 623 F.2d 631, 633 (9th Cir.1980) (citing *Jacobson*, 592 F.2d at 523); *Zweibon v. Mitchell*, 516 F.2d 594, 670–71 (D.C.Cir.1975); *Boettger v. Miklich*, 142 Pa.Cmwlth. 136, 599 A.2d 713, 720 n. 11 (1991) ("This subjective and objective test was applied by Federal Circuit courts as the basis for the good faith defense set forth in the Federal Wiretap Act.") (citing *Kilgore*, 623 F.2d 631, *Jacobson*, 592 F.2d 515, and *Zweibon*, 516 F.2d 594).

**22.** *Compare Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 1289–91, 157 L.Ed.2d 1068 (2004) (holding that reliance on warrant that failed to particularize the place to be searched and items to be seized was unreasonable); *United States v. Kelley*, 140 F.3d 596, 602 (5th Cir.1998) ("The *Leon* Court noted that in some circumstances the officer will have no reasonable grounds for believing that a warrant is valid—*e.g.* when the warrant is facially deficient in particularizing the place to be searched or the things to be seized.") (citing *Leon*, 468 U.S. at 923, 104 S.Ct. 3405); *People v. Taylor*, 198 Ill.App.3d 667, 144 Ill.Dec. 699,

is unnecessary to reach or decide this point because resolution of the good faith defense is more appropriately governed by the two-pronged standard set forth in Title I cases, as these cases are more analogous.[23] Nor is it clear that a *per se* rule, assuming one exists in this circuit, should extend to ECPA cases were we to apply the *Leon* standard in this case. The extension of that *per se* rule would be unwarranted because an ISP, unlike a law enforcement officer, cannot reasonably be expected to be familiar with the format of each jurisdiction's warrant, including the location of the judge's signature, such that an ISP's reliance on an unsigned warrant may in some circumstances be reasonable.

■ Analysis of the two-pronged standard set forth above compels the conclusion that neither party is entitled to judgment as a matter of law on this issue. While there is no dispute as to Sheridan's subjective good faith belief that the warrant was valid, reasonable persons may disagree as to whether this belief was objectively reasonable under the circumstances.[24] Several aspects of the warrant

555 N.E.2d 1218, 1221 (1990) (holding that officer's reliance on warrant that omitted the time, date, and judge's signature was unreasonable and thus did not come within the good faith exception); *State v. Nolan*, 18 Ohio App.3d 77, 480 N.E.2d 1138, 1140–41 (1984) ("In our opinion, what otherwise purports to be a search warrant is not a search warrant when it lacks any signature at all, and the officers here could not reasonably presume its validity.") *with United States v. Vanaman*, 12 Fed.Appx. 222, 231, 2001 WL 392006, at *8 (6th Cir.2001) (unpublished disposition) (concluding that officer's reliance on unsigned warrant was reasonable because officer brought the warrant to judge's residence for signature prior to search but judge signed warrant shortly after search); *Kelley*, 140 F.3d at 602 (holding that officer's reliance on unsigned and undated warrant was reasonable because the Magistrate told officer that "all the necessary steps for securing the warrant had been taken," but inadvertently forgot to sign the warrant itself); *United States v. Moore*, 41 F.3d 370, 376 (8th Cir.1994) (rejecting "a categorical pronouncement that one cannot rely in good faith on a facially defective warrant," and concluding that officer's reliance on unsigned wiretap order was reasonable); *People v. Superior Court of the State of California for the County of Los Angeles*, 75 Cal.App.3d 76, 80, 141 Cal.Rptr. 917 (1977) (holding that officer's reliance on unsigned warrant was reasonable after officer brought warrant to magistrate's home for approval and magistrate determined probable cause existed, but inadvertently failed to sign the warrant).

Worth noting, however, is that in the cases in which the court has found an officer's reliance on an unsigned warrant reasonable, it appears that the officer had been told by the judge or magistrate prior to the search that a warrant had been approved and signed, but the warrant was in fact not signed due to an inadvertent error. Accordingly, these cases have limited relevance here where AOL had not been informed prior to the disclosure by a judge, Magistrate, or the Fairfield police that the warrant application had in fact been approved by a judge, even though it was not signed.

23. Several courts have, however, relied on *Leon* in resolving good faith defense claims under the ECPA. *See Davis*, 111 F.3d at 1484 (applying *Leon* in Title II ECPA case); *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994) (applying *Leon* in Title I ECPA case); *United States v. Harvey*, 2003 WL 22052993, at *21 (E.D.Mo. July 28, 2003) (applying *Leon* in Title I ECPA case); *Bach*, 2001 WL 1690055, at *5.

Plaintiff argues that Title I's legislative history states that "[t]he term 'good faith' as used in this section includes the receipt of a facially valid court order," and thus establishes that an ISP can only be found to have relied in good faith if the warrant was facially valid. *See* H.R.Rep. No. 99–647, at 50 (1986). This argument is unpersuasive because it is a fallacy to conclude that because "good faith" includes reliance on facially valid court orders, the phrase must also exclude reasonable reliance on a facially invalid order.

24. Plaintiff mistakenly contends that Sheridan's testimony is inadmissible because she does not recall responding to the warrant at issue here, but instead testifies only that she typically makes sure that a warrant is signed

application and the surrounding circumstances suggest that Sheridan's belief was objectively reasonable, including: (i) that the warrant application included two signatures on pages two, three, and four, that of Detectives Young and Bensey; (ii) that Detective Bensey's signature is illegible; (iii) that Detective Bensey's signature appears on the line directly above the words "Signed (Judge of Superior Court)" on pages two, three, and four; (iv) that AOL is not a law enforcement agency; (v) that AOL receives approximately one thousand warrants per month; (vi) that these warrants are sent from jurisdictions all over the country that use different forms and procedures such that it is reasonable that AOL is unfamiliar with the format of the warrant application; (vii) that Sheridan, one of only four AOL fraud and compliance investigators, is responsible for responding to a substantial portion of these warrants; and (viii) that the fax cover sheet accompanying the warrant application did not indicate that the warrant application had not been submitted to a judge. Yet, other aspects of the warrant application suggest that Sheridan's belief was unreasonable, including: (i) that Detective Bensey's signature, which Sheridan allegedly mistook for that of the judge, includes, although somewhat illegibly, the title "Det."; (ii) that the text of the warrant application indicates that the warrant is signed and sworn to by both Detectives Young and Bensey such that a careful reader would expect there to be three signatures—Young's, Bensey's, and a judge's; and (iii) that page five of the warrant is entirely blank, even though it requires the signature of a judge. Accord-

ingly, because there is a genuine issue of fact as to the objective reasonableness of Sheridan's belief, the parties' cross motions for summary judgment on the issue of AOL's good faith reliance must be denied.

In sum, the parties' cross motions for summary judgment are granted in part and denied in part. On the issue of whether AOL acted knowingly and intentionally as required by § 2707(a), AOL's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted. On the issue of AOL's good faith reliance, the parties' cross motions for summary judgment are denied. On the issue of whether AOL knowingly divulged plaintiff's subscriber information as required by § 2702(a)(3), summary judgment is granted for plaintiff. Accordingly, plaintiff's ECPA claim proceeds to trial only on the issue of AOL's good faith reliance.

### III.

AOL also seeks summary judgment with respect to plaintiff's claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. St. § 42–110a *et seq.*, which asserts that AOL engaged in unfair and deceptive trade practices under Connecticut law when it disclosed plaintiff's subscriber information in violation of AOL's Privacy Policy. Specifically, AOL argues that it is entitled to judgment as a matter of law on the grounds (i) that only Virginia law applies to the parties' dispute pursuant to the Member Agreement's choice-of-law provision [25] and (ii) that even assuming *arguendo* that Connecticut law applies, AOL's

---

by a judge before releasing a subscriber's information because Rule 406, Fed.R.Evid., makes clear that "[e]vidence of the habit of a person or of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the

habit or routine practice." Rule 406, Fed. R.Evid.

25. In this regard, defendant points to the choice-of-law provision in the Member Agreement which provides that "the laws of the Commonwealth of Virginia, excluding its con-

one-time disclosure of plaintiff's subscriber information does not constitute an unfair or deceptive practice giving rise to liability under the CUTPA. Plaintiff argues to the contrary that AOL is not entitled to judgment as a matter of law on the grounds (i) that Connecticut law applies and (ii) that AOL engaged in unfair and deceptive conduct violative of that law.

■■■ Before reaching the merits of plaintiff's claim, it is necessary to determine the choice-of-law question, namely whether Virginia or Connecticut law ap-

plies. It is well-settled that a federal district court sitting in diversity and resolving a transferred matter must apply the laws of the transferor state, including its choice-of-law rules. *See Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).[26] Yet, here it is appropriate to depart from this well-settled principle given the equally settled principle that the law of the transferor state should not govern when the transfer is based on either improper venue or lack of personal jurisdiction.[27] *Iannello v. Busch Entm't Corp.,* 300 F.Supp.2d 400 (E.D.Va.2004), well il-

---

flicts-of-law rules, govern this Agreement and your membership."

**26.** *See also Klippel v. U–Haul Co. of Northeastern Michigan,* 759 F.2d 1176, 1179 (4th Cir.1985); *Plowman v. United States Dept. of the Army,* 627, 639 n. 32 (E.D.Va.1988).

Notably, *Van Dusen's* departure from the well-settled principle of *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), that a federal court apply the choice-of-law rules of the forum state, was based on the Supreme Court's concern that a transfer would allow a party to obtain a " 'change of a law as a bonus for a change of venue,' " regrettably converting § 1404(a) into a forum-shopping instrument. *Van Dusen,* 376 U.S. at 636, 84 S.Ct. 805. Accordingly, the *Van Dusen* rule was intended to ensure that transfer pursuant to § 1404(a) was merely "a federal judicial housekeeping measure... intended ... simply to authorize a change of courtrooms" and not to alter the applicable substantive law. *Van Dusen,* 376 U.S. at 636–39, 84 S.Ct. 805. In *Ferens v. John Deere Co.,* 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), the Supreme Court extended *Van Dusen* to cases in which a plaintiff, as opposed to a defendant, moves for transfer pursuant to § 1404(a). *See Ferens,* 494 U.S. at 523, 110 S.Ct. 1274 ("We decide that, in addition to other considerations, these policies require a transferee forum to apply the law of the transferor court, regardless of who initiates the transfer.").

**27.** *See Myelle v. Am. Cyanamid Co.,* 57 F.3d 411, 413 (4th Cir.1995) ("Had the case been transferred pursuant only to 28 U.S.C. § 1406(a), this question would easily be answered in the negative, for it is well settled in

this circuit that 'a district court receiving a case under the mandatory transfer provisions of § 1406(a) must apply the law of the state in which it is held rather than the law of the transferor district court.' ") (citing *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n,* 830 F.2d 522, 526 (4th Cir.1987)); *Gimer v. Jervey,* 948 F.2d 1280 (Table), 1991 WL 237931, at *1 (4th Cir.1991) (unpublished disposition) ("When such a transfer occurs, the court to which the case is transferred must apply the same law as would the court from which the case is transferred... unless the transferor court did not have personal jurisdiction over the defendant."); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 991 (11th Cir.1982) ("Specifically, Van Dusen does not govern cases in which the transferor court lacked personal jurisdiction...."); *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1110 (5th Cir.1981) ("[F]ollowing a section 1404(a) transfer from a district in which personal jurisdiction over the defendant could not be obtained, the transferee court must apply the choice of law rules of the state in which its sits."); *Martin v. Stokes,* 623 F.2d 469, 473–74 (6th Cir.1980) (holding that *Van Dusen* did not apply because the transferor district was not a proper venue); *Iannello v. Busch Entertainment Corp.,* 300 F.Supp.2d 400, 402–03 (E.D.Va.2004) (holding that *Van Dusen* did not apply because the transferor district was not a proper venue); *Scoles, et al., Conflict of Laws* 196 (3d ed. 2000) ("With respect to the fourth area of concern—where the transferor court lacked jurisdiction or when there was improper venue—courts do not regard *Van Dusen* as applicable. The law of the transfer-

lustrates this point. There, a Virginia district court held that Virginia law governed plaintiff's claims because the case was transferred from New Jersey on the grounds that venue in New Jersey was improper. *See id.* at 403. When the basis for transfer is a forum selection clause in the parties' contract, this exception to the *Van Dusen* rule also applies because under those circumstances venue in the transferor state is, by the terms of the parties' agreement, improper.[28] To hold otherwise, *i.e.* to apply the laws of the transferor state in such circumstances, would allow a plaintiff to file a claim in a court without proper venue to avoid the effect of a contractual forum selection clause and the unfavorable choice-of-law that would otherwise have resulted. In other words, applying the usual *Van Dusen* rule in the face of a forum selection clause encourages forum shopping by a party seeking to avoid the application of the contractually-chosen forum.[29] Moreover, it would enable a plaintiff to obtain a result in federal court, namely the application of the transferor state's laws, that it could not have obtained had it initially filed suit in state court because the case would have been dismissed by the state court pursuant to the forum selection clause.[30] This result clearly violates the principle of uniformity between federal and state courts underlying the Supreme Court's holding in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[31]

■ Thus, the Member Agreement's Virginia forum selection and choice-of-law clauses point persuasively to the conclusion that Virginia law applies here. To conclude otherwise and to apply Connecticut law, would not only enable plaintiff to obtain a result in federal court, namely the application of Connecticut law, that he could not have obtained in Connecticut state court in violation of the *Erie* uniformity principle, but also would enable plaintiff to avoid the consequences of the Virginia forum selection and choice-of-law clauses by filing his claims in a district without proper venue, pursuant to the fo-

---

ee court will apply to substantive, as well as choice-of-law issues.").

**28.** *See Yankee Caithness Joint Venture, L.P. v. Planet Ins. Co.,* 1996 WL 426359, at *2 (S.D.N.Y. July 30, 1996) (holding that *Van Dusen* did not apply and the transferee court's choice-of-law rules applied because the transferor court determined that venue was improper pursuant to a forum selection clause); *Clark v. American's Favorite Chicken Co.,* 1994 WL 247277, at *2–3 (E.D.La. May 31, 1994) (same); *cf. Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 855 F.Supp. 627, 632 (S.D.N.Y.1994) (holding that "when a case is transferred based on a forum selection clause, the transferee court shall apply the law of the state in which it sits if the state courts of the transferor state would have dismissed the action for *forum non conveniens,* but shall apply the law of the transferor state if the action would not have been dismissed.").

**29.** *See Martin,* 623 F.2d at 472 (expressing concern about forum shopping by initially filing claim in an impermissible forum); *Ian-*

*nello,* 300 F.Supp.2d at 402; *Plowman,* 698 F.Supp. at 639 n. 32.

**30.** *See Martin,* 623 F.2d at 473 (noting that under this exception "the outcome in the transferee district court will be the same as the outcome would have been in the state courts of the state where the action was originally brought"); *Roofing & Sheet Metal Servs., Inc.,* 689 F.2d at 992; *Caribbean Wholesales,* 855 F.Supp. at 631–32.

**31.** *See Erie,* 304 U.S. at 74–75, 58 S.Ct. 817. Notably, the Supreme Court relied on this principle of uniformity in *Van Dusen* and stated that, absent the *Van Dusen* rule, the " 'accident' of federal diversity jurisdiction" would "enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed," a result *Erie* and *Klaxon* aimed to prohibit. *See Van Dusen,* 376 U.S. at 638, 84 S.Ct. 805. The same uniformity rationale requires the exception to the *Van Dusen* rule recognized here.

rum selection clause, but with more favorable laws. That the Connecticut court's order suggests that the matter was transferred on the grounds of convenience pursuant to § 1404(a), rather than for improper venue pursuant to § 1406(a),[32] does not compel a different conclusion in this regard because it is clear that the Member Agreement's forum selection clause was the basis for the transfer. *See Iannello,* 300 F.Supp.2d at 403 (concluding that the transferee court's laws must apply even though the matter was transferred under § 1404(a) because venue in New Jersey was not proper and transfer was thus "in substance" made pursuant to § 1406(a)).[33]

And because the Member Agreement's choice-of-law provision states that "the laws of the Commonwealth of Virginia, excluding the conflicts-of-law rules, govern this Agreement and your membership," Virginia substantive law, and not Virginia choice-of-law, applies here, provided the choice-of-law provision is sufficiently broad to encompass this dispute, *i.e.* provided this dispute arises either from the Member Agreement or plaintiff's AOL membership. And, in this regard, authority in this and other circuits makes clear that a choice-of-law provision, like any other contractual provision, must not be applied more broadly than the parties intended. For instance, a choice-of-law provision that, by its terms, applies only to the parties' contract or agreement must not be construed to govern the entirety of the parties' relationship and any claim that may arise from that relationship.[34]

Here, however, it is clear that the parties' dispute arises from the Member

---

**32.** 28 U.S.C. § 1404(a) provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
> 28 U.S.C. § 1406(a) provides as follows:
> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**33.** Although plaintiff is correct that the Ninth Circuit held in *Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635 (9th Cir.1988), that the United States District Court for the District of Alaska erred in applying Alaska law after the case was transferred from Washington to Alaska pursuant to § 1404(a), when the parties' contract contained an Alaska forum selection clause, that case is unpersuasive here for the reasons set forth above. *See Sparling,* 864 F.2d at 641.

**34.** *Compare Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 726 (5th Cir.2003) ("We hold that, because the parties entered into a narrow choice of law clause, [the forum state's] law applies to and, at least conceptually, preserves some of those noncontractual

claims."); *Kuehn v. Childrens Hosp., Los Angeles,* 119 F.3d 1296, 1302 (7th Cir.1997); *Thompson and Wallace of Memphis, Inc., et al. v. Falconwood Corp.,* 100 F.3d 429, 433 (5th Cir.1996) ("The tort causes of action are separate from the agreement and its enforcement, and thus the choice-of-law provision does not govern them."); *Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996); *Caton v. Leach Corp.,* 896 F.2d 939, 943 (5th Cir.1990) (concluding that plaintiff's claim is not governed by the choice-of-law provision in the parties' contract because "[t]he parties' narrow choice of law clause does not address the entirety of the parties' relationship") *with Hitachi Credit America Corp. v. Signet Bank,* 166 F.3d 614, 628 (4th Cir.1999) (holding that the language of the choice-of-law provision "indicates that the parties intended to cover more than merely contract claims" such that the parties' choice-of-law governs related tort claims); *Volvo Trademark Holding Aktiebolaget v. CLM Equipment Co.,* 236 F.Supp.2d 536, 551 (W.D.N.C.2002) ("However, the language used in Clark's choice-of-law provision is not similarly narrow; in fact, it encompasses both the contract and the 'duties and obligations of the parties as set forth herein.' Thus, according to Arkansas law, the broad language of the choice-of-law provision displaces the Arkansas Franchise Practices Act.").

Agreement. This is so because plaintiff, by bringing the CUTPA claim, is effectively asserting his "rights" under the Privacy Policy in violation of a provision of the Member Agreement. Yet, the Agreement states that "the AOL Privacy Policy, including AOL's enforcement of [that policy], [is] not intended to confer, and do[es] not confer, any rights and remedies upon any person." Thus, plaintiff's CUTPA claim effectively puts this provision of the Agreement at issue. The same result obtains if the focus is shifted to the portion of the choice-of-law clause that refers to "your

membership." Surely, how AOL handles subscriber information relates to the subscriber's "membership." Accordingly, because the Agreement's choice-of-law provision applies to the CUTPA claim, it follows (i) that Virginia substantive law governs that claim and (ii) that given this, plaintiff may not state a claim under Connecticut statutory law.[35]

## IV.

For the reasons set forth herein, the parties' cross motions for summary judgment with respect to plaintiff's ECPA

---

**35.** *See Jessup–Morgan v. America Online, Inc.,* 20 F.Supp.2d 1105, 1109 (E.D.Mich.1998) (dismissing plaintiff's claims under the Michigan Consumer Protection Act and the Michigan Pricing and Advertising of Consumer Items Act on the ground that AOL's Terms of Service, which included its Member Agreement, provided that the Terms of Service were governed by the laws of Virginia).

Even assuming *arguendo* that plaintiff could state a claim under Connecticut law, plaintiff's CUTPA claim would fail on the ground that plaintiff does not offer sufficient evidence that defendant engaged in an unfair or deceptive act or practice. CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. St. Ann. § 42–110b(a). To show that an act or practice is "unfair" under the CUTPA, a plaintiff must show that the act or practice (i) "offends public policy...—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness," (ii) is "immoral, unethical, oppressive or unscrupulous," or (iii) "causes substantial injury to consumers." *Hartford Elec. Supply Co. v. Allen–Bradley Co.,* 250 Conn. 334, 736 A.2d 824, 842–43 (1999). And while a single act may give rise to liability under the CUTPA, *Johnson Elec. Co. v. Salce Contracting Assoc.,* 72 Conn.App. 342, 805 A.2d 735, 742 (2002), plaintiff's claim that AOL's disclosure was an unfair practice must fail because plaintiff fails to allege that AOL's negligence in responding to the warrant application violated public policy, was "immoral, unethical, oppressive or unscrupu-

lous," or caused "substantial injury to consumers." *Hartford Elec.,* 736 A.2d at 842–43.

Moreover, courts have determined that an act or practice is "deceptive," if (i) "there is a representation, omission, or other practice likely to mislead consumers," (ii) "the consumers ... interpret the message reasonably under the circumstances," and (iii) "the misleading representation, omission, or practice [is] material—that is, likely to affect consumer decisions or conduct." *Caldor v. Heslin,* 215 Conn. 590, 577 A.2d 1009, 1013 (1990) (quoting *Figgie International, Inc.,* 107 F.T.C. 313, 374 (1986)). Plaintiff's claim that AOL's disclosure was a deceptive practice must fail because plaintiff fails to show that AOL's representation in the Privacy Policy was likely to mislead consumers. This is so because the evidence is undisputed that AOL had procedures in place to conform to its representations and merely failed to do so in this instance because of Sheridan's negligence. *See Ferrigno v. Pep Boys – Manny, Joe and Jack of Delaware, Inc.,* 47 Conn.Supp. 580, 818 A.2d 903, 905 (2003) ("Incompetence does not, however, rise to the level of a CUTPA violation."); *Wood v. American Medical Response of Conn., Inc.,* 2002 WL 1457740, at *4 (Conn.Super.Ct.2002) ("Although I am aware of Superior Court cases which hold that a pattern of 'cutting corners' by one in trade or commerce can, in some circumstances, constitute a deceptive trade practice, I do not think that the less than careful transporting alleged in this case is the sort of deceptive trade practice which the legislature intended to address.... If this case were actionable under CUTPA, so would every tort claim brought against a commercial entity.").

claim are granted in part and denied in part. Plaintiff's motion is granted as to whether AOL acted with a "knowing or intentional state of mind." Summary judgment is also granted for plaintiff as to whether AOL "knowingly divulge[d]" plaintiff's subscriber information. The parties' cross motions, however, are denied as to AOL's good faith reliance on the unsigned warrant application on the ground that there is a triable issue of fact as to whether that reliance was objectively reasonable in the circumstances. Finally, AOL's motion for summary judgment with respect to plaintiff's CUTPA claim is granted because the parties' dispute is governed by Virginia substantive law. Accordingly, this matter proceeds to trial on plaintiff's ECPA claim only as to the issue of AOL's good faith reliance.

An appropriate order will issue.